(No. 74878.—

RONALD POSTMA, Appellant, v. JACK BROWN BUICK, INC., *et al.*, Appellees.

*Opinion filed November 18, 1993.—Rehearing denied January 31, 1994.*

Richard Karr and Jonathan P. Geen, of Hardt & Stern, P.C., of Chicago, for appellant.

Louis H. Lindeman, Jr., of Detroit, Michigan, and Richard C. Godfrey and J. Robert Robertson, of Kirkland & Ellis, of Chicago, for appellee General Motors Corp.

JUSTICE HARRISON delivered the opinion of the court:

Jack Brown owned a Buick dealership which he agreed to sell to Ronald Postma. When Brown sought General Motors' approval for the transfer, as required by the terms of his franchise agreement, the company decided to exercise its contractual right to buy the dealership itself. Postma responded by filing suit for injunctive relief in the circuit court of Cook County. He also moved for issuance of a preliminary injunction. The circuit court denied that motion, and its order was affirmed on interlocutory appeal (134 Ill. 2d R. 307(a)) in an unpublished order (No. 1—90—1546 (unpublished order under Supreme Court Rule 23)). We granted Postma leave to appeal (134 Ill. 2d R. 315) and now affirm.

The record before us shows that on February 14, 1990, Brown and Postma executed a written contract under which Postma agreed to purchase Brown's Buick dealership in Chicago Heights. By the terms of the contract, Postma was to pay Brown $100,000 plus other consideration and to lease from him the dealership premises and various items of personal property. The contract further provided that consummation of the transaction

was contingent on approval of Postma as a dealer by the Buick Motor Division of General Motors. This approval contingency was necessary because article 3 of Brown's "Dealer Sales and Service Agreement" conferred on General Motors "the right to select each successor and replacement dealer and to approve its dealer operator and owners and the location of its dealership facilities."

Shortly after the contract was executed, Brown submitted a proposal to General Motors on Postma's behalf, asking that Postma's dealership application be approved. By letter dated March 2, 1990, General Motors formally rejected that proposal based on various enumerated deficiencies. It also advised Brown that it might exercise its "right of first refusal" under article 3.4 of the "Dealer Sales and Service Agreement." That provision provides:

> "If a proposal by Dealer is not accepted by General Motors [as provided by this agreement] General Motors shall have a right of first refusal or option to purchase the dealership assets *** in addition to whatever other rights the parties may have under this Agreement."

Article 3.4 further provides that where, as here, the dealer, *i.e.*, Brown, has entered into a "bona fide buy/sell agreement" with respect to the dealership,

> "General Motors['] right under this Article 3.4 shall be a right of first refusal, enabling General Motors to assume the buyer's rights and obligations under such buy/sell agreement [and] the purchase price and other terms shall be those set forth in such agreement and any related documents."

At the same time General Motors rejected the proposal, it offered to allow Brown to submit a new or revised proposal for further consideration. Supplemental materials were then forwarded to General Motors by Postma, but the company opted not to rescind its rejection of the proposal. Instead, it notified Brown that it would, in fact, exercise its contractual right of first re-

fusal and buy the dealership itself. As required by its "Dealer Sales and Service Agreement" with Brown, it agreed to consummate the sale for the same price and under the same terms as specified in Brown's contract with Postma. Brown agreed that General Motors had the right to take such action and did not contest its decision.

With General Motors' actions, the contingency in Brown's contract with Postma requiring General Motors' approval could no longer be satisfied. Brown therefore regarded the contract to be terminated and so notified Postma. When Postma could not persuade Brown to sue General Motors, he filed suit against both General Motors and Brown in the circuit court of Cook County. Postma's complaint sought only injunctive relief and was in four counts. Count I was directed at Brown alone, while counts II through IV were directed solely at General Motors.

In count I, Postma alleged that Brown had been wrong to regard their contract as terminated. Brown was wrong, in Postma's view, because General Motors' right of first refusal was invalid under both the "Dealer Sales and Service Agreement" and section 4(e)(11) of the Motor Vehicle Franchise Act (815 ILCS 710/4(e)(11) (West 1992)). Postma therefore requested (1) that Brown be enjoined from terminating the contract with Postma "unless and until valid grounds exist for termination," (2) that Brown be ordered to elicit from General Motors that company's "formal position on [Postma's] application to receive Brown's franchise," and (3) that Brown be enjoined from selling the dealership assets "until the above occurs."

Counts II through IV were likewise premised on the notion that General Motors' right of first refusal was invalid. Postma charged that by exercising that invalid right, and thereby causing Brown to declare his agreement with Postma to be at an end, General Motors was

guilty of tortious interference with contract (count II), tortious interference with prospective business advantage (count III), and violation of the Motor Vehicle Franchise Act (815 ILCS 710/1 *et seq.* (West 1992)) (count IV). For his relief, Postma asked that General Motors be ordered to approve his application to be the successor franchisee to Brown and that the company be enjoined from exercising its right of first refusal and from purchasing the dealership for itself.

Six days after filing this complaint, Postma filed his motion for a preliminary injunction. The motion was opposed by both General Motors and Brown, and a hearing on the matter was convened by the circuit court. At the conclusion of that hearing, the circuit court denied Postma's motion, holding, *inter alia*, that Postma had little likelihood of success on the merits, that he had an adequate remedy at law, and that he lacked standing to sue under the Motor Vehicle Franchise Act. The court further held that Postma would be allowed to amend his complaint to assert a claim for damages.

Postma subsequently took an interlocutory appeal as of right pursuant to Supreme Court Rule 307(a)(1) (134 Ill. 2d R. 307(a)(1)). On that appeal, Postma did not pursue his claim against Brown, nor did he challenge the denial of preliminary injunctive relief on his claims against General Motors for tortious interference with contract and tortious interference with prospective business advantage. The sole issue he raised was whether the circuit court erred in concluding that he lacked standing and therefore was not entitled to sue under the Motor Vehicle Franchise Act. As we have previously discussed, the appellate court affirmed. We then granted Postma's petition for leave to appeal, and the matter is now before us for review.

In upholding the circuit court's order denying preliminary injunctive relief, the appellate court not only agreed

that Postma lacked standing to pursue a statutory claim, it also concluded that he had failed to show that he lacked an adequate remedy at law. In his petition for leave to appeal, in his brief and at oral argument before this court, Postma has not taken issue with the second of these holdings. Rather, he once again purports to limit his appeal solely to the issue of whether he has standing to pursue a statutory claim against General Motors under the Motor Vehicle Franchise Act. We do not reach this question, however, for even if we were to conclude that he possessed the requisite standing, there would still be no basis for reversing the determination that he was not entitled to a preliminary injunction.

Our analysis begins with the familiar principle that a preliminary injunction is merely provisional in nature and concludes no rights. (*Spunar v. Clark Oil & Refining Corp.* (1977), 53 Ill. App. 3d 477, 481.) Its purpose is simply to preserve the status quo pending a decision on the merits of a cause. (*Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 156.) The status quo to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy. (*In re Marriage of Schwartz* (1985), 131 Ill. App. 3d 351, 354.) Here, that would be the situation which existed immediately prior to General Motors' rejection of Brown's proposal for a transfer to Postma and its decision to exercise its right of first refusal.

A threshold problem with Postma's motion for a preliminary injunction against General Motors is that it did not seek to preserve this state of affairs. Instead, it asked for the same relief on an interim basis as Postma had requested in his underlying complaint for permanent injunctive relief. As our previous discussion has indicated, that basically amounted to compelling General Motors to approve Postma as a dealer so that he and not General Motors could take over the dealership. Because

preliminary injunctions are improper where they tend to change the status quo of the parties rather than preserve it (*Schwartz*, 131 Ill. App. 3d at 354), allowing Postma's motion under these circumstances would have been an abuse of discretion.

Even if Postma had properly sought preservation of the status quo, we would be confronted with the additional problem that the status quo has now changed and there is no apparent way of restoring it. After the circuit court refused to preliminarily enjoin General Motors' purchase of Brown's dealership, the sale went forward as planned. Thereafter, a second transfer was made. The record does not disclose the dealership's present status, but counsel for Postma advised this court at oral argument that it is no longer owned by General Motors. Given that neither of the defendants in this case now owns the dealership, that the new owner has not been joined as a party, and that Postma has not appealed the denial of the preliminary injunction as to Brown, it is difficult to see how we could now order that the dealership be placed back under Brown's ownership.

When confronted with this problem, counsel for Postma candidly acknowledged that preliminary injunctive relief may no longer be appropriate and that Postma may be limited to pursuing money damages. He suggested, however, his client's entitlement to preliminary injunctive relief is no longer of primary concern. As argued in the appellate court and in this court, Postma's principal objective in pursuing this appeal has simply been to obtain a ruling that he has standing to bring an action under the Motor Vehicle Franchise Act. According to Postma's counsel, the circuit court's adverse ruling on this issue was tantamount to a final judgment on his statutory claim and could have been appealed under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)). He chose to pursue this objective by means of a Rule 307(a)(1) (134

Ill. 2d R. 307(a)(1)) appeal instead merely because it afforded the most expeditious avenue for obtaining review of the issue.

The flaw in this strategy is that it overlooks the limited scope of review on a Rule 307(a)(1) appeal. In such an appeal, the only question properly before the reviewing court is whether there was a sufficient showing made to the trial court to sustain its order granting or denying the interlocutory relief sought. (*Hartlein*, 151 Ill. 2d at 157.) The rule may not be used as a vehicle to determine the merits of a plaintiff's case. (See *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386.) Accordingly, once Postma has ceased to press his claim that he is entitled to preliminary injunctive relief, the justification for his Rule 307(a)(1) appeal evaporates. Moreover, we cannot now allow him to treat this appeal as if it had been brought pursuant to Rule 304(a). This is so because the circuit court did not make an express written finding that there is no just reason for delaying enforcement or appeal, as required by the rule (*Marsh v. Evangelical Covenant Church* (1990), 138 Ill. 2d 458, 464-69), and Postma does not contend that the circuit court erred in not entering such a finding.

Finally, we note that even if Postma were still interested in obtaining preliminary injunctive relief and the status quo could somehow be restored, his appeal would fail. As a general rule, a preliminary injunction will only be granted where a plaintiff shows (1) that he has a clearly ascertainable right that needs protection, (2) that he will suffer irreparable harm without the protection, (3) that he has no adequate remedy at law, and (4) that he is likely to succeed on the merits. (*Hartlein*, 151 Ill. 2d at 156.) With respect to his statutory claim against General Motors, Postma argues that these requirements need not be established. This, however, is incorrect.

Section 13 of the Motor Vehicle Franchise Act provides that any franchisee or motor vehicle dealer who suffers any loss of money or property as a result of acts or practices declared unlawful by the Act "may bring an action for damages and equitable relief, including injunctive relief." (815 ILCS 710/13 (West 1992).) It is true that the courts of this State have held that the normal rules of equity requiring a showing of a lack of an adequate remedy at law and irreparable injury do not apply where a statute expressly authorizes injunctive relief. (See *People v. Fiorini* (1991), 143 Ill. 2d 318, 346.) This principle, however, has been limited to situations (1) where a statute expressly provides for injunctive relief as a tool for public officials to use in enforcing the law, or as a means to afford citizens a private right of action to restrain public officials from acting in a fashion which would violate the statute which prescribes the officials' duties and powers, or (2) where a statute is such that even an isolated violation of its terms is presumed to cause irreparable harm to the country as a whole, as under title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.* (1976)). *Sadat v. American Motors Corp.* (1984), 104 Ill. 2d 105, 113-15.

Section 13 of the Motor Vehicle Franchise Act does not fall within these exceptions. The statute, by its terms, creates a purely private right of action to redress purely private injuries. Although injunctions are specifically mentioned, the statute provides for general equitable relief and gives plaintiffs the authority to pursue damage claims as well. Nowhere in the statute does it purport to specify the conditions under which any particular form of relief, legal or equitable, will be appropriate. Under analogous circumstances, we have held that the traditional common law requirements of irreparable injury and inadequacy of legal remedies must be satisfied before injunctive relief will issue. (*Sadat*, 104 Ill. 2d at

113-15.) Postma has cited no authority which suggests that this holding should not be followed here.

For the foregoing reasons, the judgment of the appellate court affirming the denial of Postma's motion for a preliminary injunction is affirmed.

*Affirmed.*