RICKY ALAN (RICK) BUTLER, Plaintiff-Appellee, v. USA VOLLEYBALL, f/k/a United States Volleyball Association, *et al.*, Defendants-Appellants.

First District (4th Division)   Nos. 1—96—0743, 1—96—1086 cons.

Opinion filed November 21, 1996.

Timothy G. Nickels, W. Scott Nehs, and Jeannine Y. Sano, all of Wildman, Harrold, Allen & Dixon, of Chicago, for appellant USA Volleyball.

Alan J. Feder, of Chicago, for appellant Lea Wagner.

Jerome Wiener and Brian M. Fornek, both of Schain, Firsel & Burney, Ltd., of Chicago, for appellee Ricky Alan Butler.

Dixie Lee Laswell and Patrice P. Barnard, both of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago, for intervenors.

JUSTICE THEIS delivered the opinion of the court:

The defendants, USA Volleyball and Lea Wagner, commissioner of the Great Lakes Regional Volleyball Association, present a consolidated appeal of the trial court's order granting a permanent injunction prohibiting the defendants from enforcing their expulsion of plaintiff, Ricky Alan (Rick) Butler, from USA Volleyball membership, for having sex with minor female players. The trial court found that the standard of conduct contained in USA Volleyball bylaws and invoked to expel Butler was "impermissibly vague." On appeal, defendants argue that the trial court abused its discretion in granting a permanent injunction in favor of Butler. First, defendants contend that the trial court applied an erroneous constitutional standard to determine whether the bylaws of USA Volleyball, a voluntary association, are vague. Second, defendants claim that the trial court erred by not finding that USA Volleyball relied on its implied right to discipline when expelling Butler. We reverse.

Rick Butler, a successful junior volleyball coach, has coached almost 30 national championship junior girls' teams. Butler created the Great Lakes Center in West Chicago, a premier volleyball facility, and operates its Sports Performance Volleyball Club. Butler also runs the largest volleyball camp nationwide and is the "most published video author" in volleyball.

In 1994, USA Volleyball received complaints from several former players alleging that Butler had sexual relationships with them when they were under 18 years old and playing for Butler's volleyball club. Butler and his attorney then met with the executive director and general counsel of USA Volleyball to discuss the allegations. Butler asked for and was provided with information regarding the charges. In November 1994, Lea Wagner, the commissioner of Great Lakes Regional Volleyball, informed Butler that a formal complaint had been lodged with USA Volleyball and twice requested from Butler a detailed written response specifically admitting or denying the three separate allegations of misconduct. USA Volleyball then outlined its position for Butler, explaining that Butler could be disciplined under USA Volleyball's general discipline authority or pursuant to section 9.04 of USA Volleyball bylaws authorizing disciplinary action for conduct subjecting USA Volleyball to "public embarrassment or ridicule." Pursuant to Butler's request, the Regional Volleyball Association would be the "first level of adjudication" pursuant to section C of article XI of the USA Volleyball operating code.

The regional hearing was held before a panel comprised of four executive committee members of the Great Lakes Regional Volleyball Association. Butler was represented by counsel. Butler and his wife made a prepared statement and the panel received a one-page statement from each of the three girls. At the conclusion of the hearing, the panel believed it had insufficient evidence to consider the charges and requested additional information regarding both Butler's response to the charges and the specifics of the allegations. Several months later, the panel reconvened and unanimously determined that there was probable cause to believe that the alleged misconduct occurred and that the appropriate discipline would entail suspension or expulsion for greater than one year. Accordingly, the matter was referred to the ethics and eligibility committee of USA Volleyball pursuant to article XI(D) of the operating code.

Butler was notified of the regional hearing determination and the hearing date before the ethics and eligibility committee (Ethics Committee). Butler was also provided with a copy of all materials submitted to the Ethics Committee. A *de novo* hearing was held before the Ethics Committee in July 1995. Butler again was represented by counsel and was given an opportunity to cross-examine the three complainants via questions asked of them through the committee chair. Butler also was allowed to present any and all witnesses who could testify regarding the alleged events.

The Ethics Committee issued its decision, finding that Butler "had unprotected sexual intercourse and a subsequent physical and

emotional relationship" with all three girls, two of whom were 16 at the time and the other 17. Accordingly, the Ethics Committee expelled Butler from USA Volleyball membership for life with the option of applying for conditional membership in five years. Butler appealed the decision to the executive committe of USA Volleyball, which affirmed the decision of the Ethics Committee. Additional appeals to the board of directors and the delegate assembly of USA Volleyball were available. The parties, however, agreed to consider Butler's administrative appeals exhausted so that he could bring legal action.

Butler filed a motion for a temporary restraining order pursuant to section 11—101 of the Code of Civil Procedure (735 ILCS 5/11—101 (West 1994)), which the trial court denied. The court held that Butler did not raise a fair question of success on the merits because the defendants had acted in accordance with USA Volleyball bylaws and operating code, Butler was accorded rudimentary due process, and no emergency existed on which to grant Butler emergency relief.

Butler then filed a motion for a preliminary injunction pursuant to section 11—102 (735 ILCS 5/11—102 (West 1994)) to enjoin defendants from enforcing USA Volleyball's expulsion order. Butler challenged the expulsion order on both substantive and procedural grounds. First, Butler argued that section 9.04 of the USA Volleyball bylaws, authorizing expulsion of members for acts causing the corporation "public embarrassment or ridicule," is an unenforceable standard because the language is impermissibly vague and ambiguous. Second, Butler alleged that USA Volleyball did not follow its own bylaws and operating code in conducting the disciplinary action. And, finally, Butler claimed that defendants denied him due process. The trial court allowed a motion to intervene submitted by minor players of the Great Lakes Regional Volleyball Association and minor players on the Sports Performance Volleyball teams coached by Butler. After a hearing on the merits, the parties agreed to have the court decide the matter as a permanent injunction motion.

The trial court granted Butler's motion and permanently enjoined USA Volleyball and Lea Wagner from enforcing the expulsion order of the Ethics Committee. In so holding, the court found that Butler had met all four prongs necessary to obtain injunctive relief: (1) a clear and ascertainable right in need of protection; (2) irreparable harm without injunctive relief; (3) no adequate remedy at law; and (4) success on the merits. *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399, 626 N.E.2d 199, 204 (1993). The court did not address the substantive findings of USA Volleyball that Butler had engaged in the alleged misconduct. Instead, the court found that section 9.04 of

the USA Volleyball bylaws presented an "impermissibly vague" standard for expelling a member. The court explained that "public embarrassment and ridicule" was not an objective standard but, rather, a subjective one, leaving no limit on the discretion of association disciplinary bodies. The court declined to decide whether USA Volleyball had an implied right to discipline because Butler was not specifically charged with such a violation. The court intimated that the association might be able to discipline Butler based on its implied right to expel members for conduct that clearly violates the fundamental objects of the association, in accordance with the procedures contained in the bylaws and operating code.

On appeal, defendants argue that the trial court erred in granting a permanent injunction in favor of Butler: (1) by applying an erroneous constitutional standard to determine whether the bylaws of USA Volleyball, a voluntary association, are vague; and (2) by not finding that USA Volleyball relied on its implied right to discipline when expelling Butler. We reverse and find that the trial court erred in determining that Butler succeeded on the merits. Therefore, we need not address whether Butler has a protectible property, contract, or membership interest in this situation. Further, we will not discuss the interests of the intervenors, minor members of the Great Lakes Regional Volleyball Association and minor players on teams coached by Butler.

■ Typically, motions for injunctive relief are reviewed under an abuse of discretion standard and the trial court's decision will not be reversed unless it is against the manifest weight of the evidence. *McArdle v. Rodriguez*, 277 Ill. App. 3d 365, 372, 659 N.E.2d 1356, 1362 (1995). There is, however, a distinction in both purpose and proof as between preliminary and permanent injunctions. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 385-86, 483 N.E.2d 1271, 1277 (1985). Preliminary injunctions are designed simply to preserve the status quo pending resolution of the merits of the case. *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 397, 626 N.E.2d 199, 202 (1993). In contrast, permanent injunctions are designed to extend or maintain the status quo indefinitely when the plaintiff has shown irreparable harm and that there is no adequate remedy at law. *American National Bank & Trust Co. v. Carroll*, 122 Ill. App: 3d 868, 881, 462 N.E.2d 586, 595 (1984). When granting permanent injunctive relief, the trial court, by definition, necessarily decides the plaintiff's success on the merits of the case. And when, as here, the case raises pure questions of law, we find that the determination of the merits of the permanent injunction is subject to *de novo* review. *Magee v. Huppin-Fleck*, 279 Ill. App. 3d 81, 85, 664 N.E.2d 246, 249 (1996).

■ Courts are reluctant to interfere with the disciplinary decisions of voluntary associations. Absent a violation of law or public policy, Illinois courts refrain from examining the substance of voluntary associations' actions or regulations. *Werner v. International Ass'n of Machinists*, 11 Ill. App. 2d 258, 272, 275, 137 N.E.2d 100, 108, 109 (1956); *Yeomans v. Union League Club*, 225 Ill. App. 234, 237 (1922). Historically, courts have reversed association action only when there was a violation of the constitution or bylaws of the association, when the association rules and proceedings violated concepts of fundamental fairness, or when the association's action was motivated by prejudice, bias, or bad faith. *Van Daele v. Vinci*, 51 Ill. 2d 389, 397, 282 N.E.2d 728, 733 (1972) (Underwood, C.J., dissenting); *Virgin v. American College of Surgeons*, 42 Ill. App. 2d 352, 369, 192 N.E.2d 414, 423 (1963).

Indeed, disciplinary proceedings conducted by voluntary associations do not require strict compliance with judicial standards of due process. Instead, the accused member is entitled to a hearing before "a fair and impartial tribunal." *Van Daele*, 51 Ill. 2d at 394-95, 282 N.E.2d at 732. This fair hearing assumes that the accused member is given adequate notice of the charges. *International Brotherhood of Electrical Workers, Local No. 399 v. Zoll*, 135 Ill. App. 3d 910, 915, 482 N.E.2d 446, 450 (1985). The accused also should have an opportunity to defend. *Virgin*, 42 Ill. App. 2d at 371, 192 N.E.2d at 423. In addition, "some" evidence must be presented at the disciplinary hearing to support the alleged charges. *Sheet Metal Workers Local Union No. 218 v. Massie*, 255 Ill. App. 3d 697, 705, 627 N.E.2d 1154, 1159 (1993).

■ Butler claims the association's rules violated concepts of fundamental fairness because section 9.04 of the USA Volleyball bylaws presents an "impermissibly vague" standard. Section 9.04 of the USA Volleyball bylaws provides that any member who "acts in such a fashion as to cause this Corporation public embarrassment or ridicule by virtue of having such *** individual associated with it, may be suspended or expelled from affiliation *** by a majority vote of a duly constituted quorum of the Board of Directors acting in good faith." The bylaws then authorize the board to delegate various functions, including discipline to various subcommittees. Disciplinary procedures are provided for in USA Volleyball's operating code.

Butler's primary argument to the trial court was that the "public embarrassment" standard in USA Volleyball bylaws was insufficient to put him on notice that sexual relationships with minor girls whom he coached could be cause for expulsion. However, Illinois courts have not required associations to draft bylaws detailing specific acts

as grounds for discipline. As long as the association bylaws are reasonable, and their enforcement not arbitrary, courts will not interfere.

In an early case, *Yeomans v. Union League Club*, 225 Ill. App. 234, 237 (1922), this court found that a club member was appropriately expelled for kissing a female club employee when the bylaws provided that any member could be expelled for "misconduct, and especially any member whose conduct shall be hostile to the objects or injurious to the character, of this club." The court did not require a specific finding of misconduct. Instead, the court observed that there was no allegation that the bylaw was illegal or against public policy and, in the absence of fraud or gross injustice, the court would not interfere. *Yeomans*, 225 Ill. App. at 242.

In *Head v. Lutheran General Hospital*, 163 Ill. App. 3d 682, 694, 516 N.E.2d 921, 928-29 (1987), the hospital had no written standard governing the frequency of patient visits or the writing of progress notes. Nevertheless, the various hospital review committees applied a standard of reasonableness to evaluate the doctor's behavior. The court rejected the doctor's claim that the hospital board's decision was arbitrary. "Courts have long applied a standard of reasonableness to evaluate behavior, and the fact that people can disagree on the application of this standard to certain cases does not render the decisions based on this standard arbitrary." *Head*, 163 Ill. App. 3d at 695, 516 N.E.2d at 929.

USA Volleyball's decision that Butler's behavior was unreasonable was not arbitrary. Further, the association's decision that it would be subject to public embarrassment because one of its best known members had sexual relations with minor players was not fundamentally unfair. Butler has made no allegation that USA Volleyball's disciplinary proceedings were conducted in bad faith or that the decision to expel Butler was made on the whim or caprice of certain association members. See *Van Daele v. Vinci*, 51 Ill. 2d 389, 282 N.E.2d 728 (1972). In the absence of such an allegation, we only consider the *process* afforded the disciplined member. *Siqueira v. Northwestern Memorial Hospital*, 132 Ill. App. 3d 293, 300, 477 N.E.2d 16, 21 (1985). Courts will not interfere with association disciplinary actions comprised of "fair proceedings which may be provided for in organization by-laws, carried forward in an atmosphere of good faith and fair play." *Van Daele*, 51 Ill. 2d at 395, 282 N.E.2d at 732.

Based on our review of the record, USA Volleyball followed its bylaws and operating code. Butler's expulsion was conducted according to the full and fair procedures outlined by USA Volleyball bylaws and operating code. Moreover, the disciplinary action of USA Volleyball fully complied with fundamental fairness.

Butler received substantially more than "rudimentary due process" at USA Volleyball's disciplinary proceedings. USA Volleyball complied with special requests made by Butler. Butler received two separate hearings. He received notice of the specific charges of sexual misconduct made against him. He received copies of all the documentation received by the Ethics Committee. At the Ethics Committee hearing, Butler had the assistance of counsel, he was allowed limited cross-examination of the complainants, and he was allowed to present witnesses who could testify as to the events in question. In short, not only were the bylaws and operating code of USA Volleyball complied with, but within those Butler was afforded every opportunity to clear his name.

Butler has made no allegation that the proceedings were tainted or that the decision makers were biased. The nature of voluntary associations requires that their disciplinary actions, when conducted with fundamental fairness, be respected. The trial court's order granting a permanent injunction against defendants' enforcement of their expulsion order is reversed.

Reversed; injunction dissolved.

HOFFMAN, P.J., and O'BRIEN, J., concur.