NEWELL CO., a Delaware
Corporation, Plaintiff,

v.

Gary D. LEE, Defendant.

No. 96 C 4400.

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 8, 1997.

Stephen J. Spitz, Robert David Cheifetz, Sperling, Slater & Spitz, P.C., Chicago, IL, for Newell Co.

Martin K. Denis, Daniel A. Kazlauski, Fox and Grove, Chartered, Chicago, IL, for Gary D. Lee.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

Plaintiff, Newell Co. ("Newell"), has filed an amended complaint against defendant, Gary D. Lee ("Lee"), alleging breach of a covenant not to compete and requesting preliminary and permanent injunctive relief. Defendant has filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) or, in the alternative, a motion to transfer pursuant to 28 U.S.C. 1404(a). For the reasons set forth below, defendant's motion is denied in part and granted in part.

### FACTS

Plaintiff is a Delaware Corporation with its principal place of business in Freeport, Illinois. Defendant is a resident and citizen of Missouri. Defendant's business is conducted at the offices of Gary D. Lee & Associates, 11255 Olive Street, Suite 2B, St. Louis, Missouri.

On or about September 1, 1993, plaintiff, along with LR Acquisition Co., entered into an agreement ("Agreement") with defendant to purchase defendant's family business, Lee–Rowan Company ("Lee–Rowan"), a Missouri corporation. Plaintiff purchased Lee–Rowan's stock for millions of dollars, whereby defendant, individually, received over $4,000,000. In conjunction with the Agreement, defendant entered into a covenant not to compete ("Covenant Not to Compete") on or about September 22, 1993. The Covenant Not to Compete states, in pertinent part:

[Defendant] agrees that he will not, for a period of five years from the Effective Time of the Merger (as defined in the Reorganization Agreement) (the "Limitation Period"), directly or indirectly, in his or her individual capacity or otherwise, anywhere in the United States, Canada, Mexico, or the United Kingdom, (a) own, manage, operate or control, or participate in the ownership, management, operation or control of, or otherwise be engaged in, employed by, render services or give advice to, or be connected with or have any interest in, as a stockholder, director, officer, employee, agent, consultant, partner, investor or lender or in any other capacity, any natural person, corporation, partnership, proprietorship, other business organization, trust, union, association or any group or division of any of the foregoing (the "Lee–Rowan Competitor"), which is engaged in the design, manufacture, marketing, distribution or sale of ... any product similar to, or the same appearance as, or fulfilling the same function as, any product of Lee–Rowan identified in Lee–Rowan's product catalog as of the Termination Date.

Lee–Rowan is a company founded by defendant's grandfather that manufactures and markets shelving, organizers, and other storage products for closets and other areas of the home. As of 1993, Lee–Rowan's sales in the United States, Canada, Mexico and the United Kingdom exceeded $100,000,000, making Lee–Rowan a substantial player in the billion dollar storage and shelving industry. The majority of Lee–Rowan's sales are made through mass marketers such as K-mart, Walmart, and Target, and home centers such as Builders Square and Home Depot.

Lee–Rowan's shelving and related storage products are generally, but not exclusively, made from industrial grade steel. The steel is finished with a baked-on epoxy of different colors. Plaintiff contends that Lee–Rowan's "wire" or "ventilated" products compete directly with similar shelving and storage products made of plastic and wood. For the convenience of their customers, marketers of storage and shelving products offer varieties of such products in plastic, wire, and wood.

Prior to plaintiff's acquisition of Lee–Rowan, defendant was the Chief Executive Officer and shareholder of the company. After the effective date of the acquisition, September 22, 1993, defendant became the president of Lee–Rowan. Defendant resigned from this position on January 1, 1996.

On or about May 30, 1996, defendant requested from plaintiff an "okay to proceed" with a product line of closet shelving, organizers and related accessories. Plaintiff argues that these products would directly compete with its own product line. Defendant contends that the Covenant Not to Compete covers only "wire" products and that, because defendant's proposed product line consists of only plastic and wood products, the covenant is not violated. Accordingly to plaintiff, defendant also suggested that, because plaintiff had permitted defendant and another former employee to be involved with certain storage products which would not affect Lee–Rowan's business, plaintiff had lost the right to protect its product line from defendant's individual business ventures.

In a phone conversation with plaintiff, defendant allegedly suggested that he may "test the non-compete." Shortly thereafter, defendant's attorneys informed plaintiff that defendant's "intention at this time is to participate in the custom storage industry via full or solid surface shelving products manufactured in plastic, wood or other non-wire material." Defendant's attorney's insisted that, because the proposed products were not made of "wire," they would not "fulfill the same function as any product of Lee–Rowan"

and, thus, did not violate the Covenant Not to Compete.

On August 30, 1996, plaintiff filed an amended complaint requesting specific performance of the Covenant Not to Compete until September 22, 1998. Plaintiff requests preliminary and permanent injunctive relief, as well as damages, costs of suit, attorney's fees, and "other and further relief as is just and proper." Defendant brings the instant motion to dismiss for failure to state a claim and improper venue or, in the alternative, for transfer of venue.

## DISCUSSION

### I. Motion to Dismiss

#### A. *Failure to State a Claim*

Defendant argues that plaintiff has failed to state a claim upon which relief can be granted and, therefore, the amended complaint should be dismissed under Rule 12(b)(6). Specifically, defendant contends that, based on the allegations in the amended complaint, plaintiff is not entitled to either a preliminary or permanent injunction because there is not a reasonable probability that a real injury, for which there is no adequate remedy at law, will occur. According to defendant, plaintiff simply contends that defendant has intentions to manufacture and distribute products which, allegedly, would violate the Covenant. This court disagrees.

A court decides a Rule 12(b)(6) motion on the sufficiency of the complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir.1989), *cert. denied,* 498 U.S. 845, 111 S.Ct. 129, 112 L.Ed.2d 97 (1990). All well-pleaded facts will be taken as true, and all inferences are made in favor of the plaintiff. *Montgomery Ward v. Warehouse Mail Order, Office, Technical and Professional Employees Union,* 911 F.Supp. 1094, 1099 (N.D.Ill.1995). Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

Here, the amended complaint alleges that the parties entered into the Covenant Not to Compete and that, based on representations made to plaintiff by defendant and defendant's counsel, defendant intends to take action that will violate the Covenant. Accordingly, plaintiff has requested preliminary and permanent injunctive relief, as well as any other available and appropriate relief. Under Illinois law, a party seeking preliminary injunctive relief must demonstrate by a preponderance of the evidence that: (1) the party has a clear right in need of protection; (2) no adequate remedy at law exists; (3) irreparable harm will result if the preliminary injunction in not granted; and (4) there is a likelihood of success on the merits. *Service Systems Corp. v. Van Bortel,* 174 Ill. App.3d 412, 419–20, 123 Ill.Dec. 833, 528 N.E.2d 378 (1st Dist.1988). The standards for granting a permanent injunction are substantially similar to those for granting a preliminary injunction. *Spiers Graff Spiers v. Menako,* 190 B.R. 1001, 1013 (Bankr.N.D.Ill. 1996). Yet, a preliminary injunction preserves the status quo pending resolution of a case, while a permanent injunction maintains the status quo indefinitely when the plaintiff has shown both irreparable harm and that no adequate remedy at law exists. *Butler v. USA Volleyball,* 285 Ill.App.3d 578, 579, 220 Ill.Dec. 642, 643–44, 673 N.E.2d 1063, 1064–65 (1st Dist.1996).

A preliminary injunction will be granted sparingly for a covenant not to compete. *Peterson–Jorwic Group, Inc. v. Pecora,* 224 Ill.App.3d 460, 166 Ill.Dec. 718, 719, 586 N.E.2d 676, 677 (1st Dist.1991) (preliminary injunction to enjoin violation of restrictive covenant granted only in extreme emergency situations where serious harm would otherwise result). Permanent injunctive relief, in contrast, depends on the disposition of the merits of the case. *Butler,* at 643–44, 673 N.E.2d at 1064–65. In the instant case, defendant contends that plaintiff's claim for injunctive relief and a potential declaratory judgment should be denied because it is not ripe for adjudication. In deciding ripeness issues, a court must first weigh the fitness of the relevant issues for judicial resolution without further factual development. *Hinrichs v. Whitburn,* 975 F.2d 1329, 1333 (7th

Cir.1992) (citing *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967)). Second, the court must evaluate the hardship to the parties should the court chose to withhold consideration of the matters before it. *Id.*

■ Here, defendant argues that plaintiff's perceived conflict is only speculative. Defendant, however, has represented to plaintiff that he intends to engage in a business venture that plaintiff contends will directly compete with its product line. Plaintiff need not wait until defendant acts on his intention to bring an action to prevent what might well be irreparable harm. *See Blum v. Yaretsky*, 457 U.S. 991, 1000, 102 S.Ct. 2777, 2783–84, 73 L.Ed.2d 534 (1982) (citing *Pennsylvania v. West Virginia*, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117 (1923)). Moreover, defendant has filed an action for declaratory judgment in the Eastern District of Missouri seeking a declaration that the Covenant Not to Compete is unenforceable. The district court in Missouri has recently ordered the action to be transferred to this district, where it will be consolidated with the instant case.

■ These facts establish the ripeness of this case, with the exception of plaintiff's claim for a preliminary injunction. That claim is dismissed without prejudice because there is no threat of immediate irreparable harm. However, plaintiff's claim for permanent injunctive relief and its potential declaratory judgment claim are ripe because of defendant's alleged threat to "test" the Covenant Not to Compete, defendant's stated intention to participate in activities that would allegedly compete with plaintiff and violate the Covenant, and defendant's rejection of plaintiff's interpretation of the Covenant. Additionally, the denial of defendant's 12(b)(6) motion would, pursuant to Fed. R.Civ.P. 13(a), force defendant to seek a declaratory judgment as a compulsory counter-claim, because in his Missouri suit, defendant claims continuing irreparable harm by the enforcement of the Covenant.[1] Accordingly, defendant's motion to dismiss plain-

tiff's claim for permanent injunctive or other appropriate relief is denied.

### B. *Improper Venue*

Defendant also brings a motion to dismiss for improper venue pursuant to Rule 12(b)(3). Under 28 U.S.C. section 1391(a), venue is proper in a civil case based on diversity only in:

(1) a judicial district where any defendant resides ..., (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred ... or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

In the instant case, defendant lives in Missouri and alleges that the Covenant Not to Compete was negotiated and signed in Missouri. However, in the jurisdiction clause of the Covenant Not to Compete, defendant consented "to the exclusive jurisdiction of the state and federal courts for the City of Chicago, Illinois."

■ The validity of a forum selection clause in a diversity case is governed by federal common law. *Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir.1990). A forum selection clause will be enforced unless enforcement would be unreasonable or unjust or the clause was procured by fraud. *Paper Express, Limited v. Pfankuch Maschinen*, 972 F.2d 753, 757 (7th Cir.1992). Defendant contends that the forum selection clause in the Covenant Not to Compete is invalid because: (1) he executed the Covenant without benefit of counsel; (2) the Covenant is a contract of adhesion which defendant was compelled to execute based on representations to him that it was mandated by the agreement; and (3) enforcement of it would be unfair, unreasonable, and a violation of the minimum requirements of due process. The court rejects these arguments and finds the forum selection clause to be valid.

First, the court finds it difficult to sympathize with defendant's claim that he was un-

---

1. Because the court anticipates that the Missouri action will be consolidated for all purposes after it is transferred, the formal filing of a counter-claim will be unnecessary.

represented and "compelled" to execute the forum selection clause as a "contract of adhesion." As Vice–Chairman and Chief Executive Officer of Lee–Rowan, defendant is presumed to have a degree of business acumen above the ordinary. He could have, and perhaps should have, used a small portion of the $4 million he received from the sale of his stock to plaintiff to retain separate counsel.

■ Moreover, the court finds little to support defendant's claim that the forum selection clause is fundamentally unfair. As the Supreme Court noted in *Carnival Cruise Lines v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991), which upheld a forum selection clause requiring a cruise ship passenger to bring a personal injury suit in Florida, such clauses benefit both parties to a transaction as well as the courts by eliminating disputes (such as the instant motion) over proper venue and jurisdiction. In the instant case, plaintiff is located in the Western Division of this district, employed Chicago counsel, and thus had good reason to wish to litigate any disputes arising out of the Agreement and Covenant in Chicago. There is nothing unfair in now holding defendant to his bargain. Accordingly, the court denies defendant's motion to dismiss for improper venue.

## II. Motion to Transfer Venue

■ A decision to transfer a case under 28 U.S.C. § 1404(a) is largely in the court's discretion. *Von Holdt v. Husky Injection Molding Systems, Ltd.,* 887 F.Supp. 185, 187 (N.D.Ill.1995). Transfer of venue under section 1404(a) is proper if the moving party demonstrates that: (1) venue is proper in the transferor district; (2) venue and jurisdiction are proper in the transferee district; and (3) the transfer will serve the convenience of parties, the convenience of the witnesses, and the interests of justice. *State Farm Mut. Auto. Ins. Co. v. Estate of Bussell,* 939 F.Supp. 646, 651 (S.D.Ind.1996); *Von Holdt,* 887 F.Supp. at 188.

■ In the instant case, venue is proper in this district, the transferor district, because defendant has consented to venue and personal jurisdiction in the state and federal courts in Illinois in the Covenant Not to Compete. Venue and jurisdiction are also proper in the Eastern District of Missouri because defendant resides there. With respect to the convenience of the parties, the Eastern District of Missouri is not clearly more convenient than the Eastern Division of this district. Plaintiff's principal place of business is not in Chicago, but in Freeport, Illinois, which is in the Western Division of this district. Defendant, who lives in St. Louis, Missouri, argues that it is inconvenient for him to travel to Chicago. Yet, as part of the consideration for the sale of his Lee–Rowan stock to plaintiff, defendant consented to the exclusive jurisdiction of the state and federal courts of Illinois.

■ A forum selection clause in a contract does not preclude a court from transferring venue of an action relating to the contract. *Heller & Co. v. Godbe Co.,* 601 F.Supp. 319, 321 n. 2 (N.D.Ill.1984); *G.H. Miller & Co. v. Hanes,* 566 F.Supp. 305, 307 (N.D.Ill.1983). Rather, such a clause is one of the many factors to be considered by the court in deciding a motion to transfer venue under 28 U.S.C. § 1404(a). *G.H. Miller & Co.,* 566 F.Supp. at 307. In any event, this circuit has emphasized that section 1404(a) may not be used to circumvent an otherwise valid forum selection clause. *Northwestern Nat. Ins. Co. v. Donovan,* 916 F.2d 372, 378 (7th Cir.1990); *Continental Bank N.A. v. Modansky,* 755 F.Supp. 812, 813 n. 2 (N.D.Ill.1991). Where a party has consented contractually to the exclusive jurisdiction of certain courts, the party has consented to venue and personal jurisdiction in such courts and cannot later move for change of venue on the grounds of inconvenience. *Donovan,* 916 F.2d at 378; *Heller,* 601 F.Supp. at 319.

■ As explained above, defendant entered into a Covenant Not to Compete with a valid forum selection clause specifying exclusive jurisdiction and venue in the state or federal courts of Illinois. Thus, defendant has waived his ability to complain of venue in this court on grounds of inconvenience. *See Donovan,* 916 F.2d at 378. Nevertheless, inconvenience to *third parties* such as witnesses may lead a court to transfer venue in

the face of a valid forum selection clause. *Donovan*, 916 F.2d 372, 376 (7th Cir.1990). In his memorandum in support of his motion, defendant contends that at least five of his witnesses reside in the Eastern District of Missouri, without providing the names of such witnesses. According to plaintiff, defendant has provided defendant with only two potential non-party witnesses residing in Missouri, one of whom is defendant's father.[2] Plaintiff, on the other hand, has submitted affidavits from many of its witnesses that venue in this district would be more convenient for them than any court in Missouri. Based on the record before it, the court declines to find the inconvenience to third parties so great as to warrant transfer to the Eastern District of Missouri.

Transfer is also not mandated by the interests of justice or judicial efficiency. First, plaintiff's choice of forum should be considered by the court. *Roberts & Schaefer Co. v. Merit Contracting, Inc.*, 99 F.3d 248, 254 (7th Cir.1996). Second, the Covenant Not to Compete specifies that it is governed by Illinois law, and this district is more familiar with Illinois law than a federal or state court in Missouri. Third, as plaintiff point out, the docket for this district is slimmer than that of the Eastern District of Missouri. *See* Federal Court Management Statistics (1995); *Bain v. Yuma Petroleum Co.*, 1995 WL 733454, at *8 (N.D.Ill.1995) (considering statistics in deciding motion to transfer venue under section 1404(a)). Finally, defendant's action in Missouri state court (removed by the defendants to the Eastern District of Missouri), which involves the same contract and same issues as the instant case, has been transferred to this court pursuant to the Eighth Circuit's "first-filed" rule. *See, Midwest Motor Express v. Central States Southeast*, 70 F.3d 1014, 1017 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1704, 134 L.Ed.2d 803 (1996) (rule " 'gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction.' ") (quoting *North-*

*west Airlines v. American Airlines*, 989 F.2d 1002, 1006 (8th Cir.1993)). Accordingly, defendant's motion to transfer venue pursuant to 1404(a) is denied.

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion to dismiss plaintiff's claim for preliminary injunctive relief without prejudice. The court denies defendant's motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), motion to dismiss for improper venue pursuant to Rule 12(b)(3), and motion to transfer venue pursuant to 28 U.S.C. 1404(a).

ny by deposition pursuant to Fed.R.Civ.P. 30(1).

---

2. Of course, any out of state witness, who is not subject to subpoena in Illinois, can offer testimo-