(text box: 1) NO. 5-00-0382

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

JAMES W. SPARKS and MARGARET A. SPARKS, )  Appeal from the

)  Circuit Court of

     Plaintiffs-Appellees, )  Madison County.

)

)  No. 97-CH-108

) 

DONALD E. GRAY, VIRGINIA GRAY, and )

ELAINE FOURNIE, )  Honorable 

)  Ann Callis,

     Defendants-Appellants. )  Judge, presiding.

________________________________________________________________________

JUSTICE WELCH delivered the opinion of the court:

This is a controversy between neighboring landowners.  James W. Sparks and Margaret A. Sparks (plaintiffs) sought injunctive relief against Donald E. Gray, Virginia Gray, and Elaine Fournie, the Grays' daughter (defendants), alleging that defendants engaged in a course of conduct "so as to cause water to come onto the property of the plaintiffs." Plaintiffs alleged that the following actions by defendants caused water to come onto their property:  (1) defendants pumped water into a ditch between the parcels which, because of inadequate capacity and drainage, caused water to overflow onto plaintiffs' land, (2) defendants altered the natural flow of water by constructing certain ditches and flap gates, (3) defendants placed fill dirt onto defendants' lands at some locations that are lower in elevation than the plaintiffs' land, and (4) defendants constructed a levy, thereby creating a dam-like structure.  

Following a bench trial in the circuit court of Madison County, the trial court granted the injunction, prohibiting defendants from pumping water into the common ditch at a time when the water in the ditch would spill over to plaintiffs' land, finding that defendants did not construct certain ditches and flap gates, enjoining defendants from placing fill on their lands, and denying plaintiffs' request that defendants remove the levy.  The injunction was granted to prevent significant water accumulation on plaintiffs' property.  On appeal, defendants contend that the trial court entered the injunction without sufficient proof that a specific and substantial injury would occur.  For the reasons that follow, we reverse.

The parties own adjoining properties located in Pontoon Beach.  The properties are located within the confines of a triangular perimeter bordered by Interstate Route 255 to the east, Horseshoe Lake Road (also known as County Highway 35) to the south, and the Cahokia Canal (the Canal) to the northwest.  The properties are located in a flood plain known as the "American Bottoms."  The properties have been described by plaintiff James Sparks as "low lying[,] *** subject to retaining and taking water."  Although the properties are "confined" within this triangular perimeter, there are several ditches and drains located throughout the properties.

In order to satisfy the requirements to obtain a building permit from the City of Pontoon Beach, the ground floor of any new construction must have an elevation of at least 417 feet above sea level.  That level marks the elevation to which water is expected to rise in the event of a 100-year flood.  Defendants' properties lie below the 417-foot level.  Plaintiffs' house sits at 423 feet above sea level, but not all of plaintiffs' property sits above 423 feet.  Part of plaintiffs' property lies at or near the same level as defendants' properties.  The record shows that much of Horseshoe Lake Road is 415.5 to 417 feet above sea level.  Certainly, the Canal is lower than both plaintiffs' and defendants' properties, or else water would not be able to drain from the properties into the Canal.

In an attempt to fill their land to the 417-foot level, defendants began to place a significant amount of fill dirt on their properties.  Defendant Donald Gray testified that it was his intent to eventually fill all of his land to the 417-foot level, with a few exceptions, but that he did not think that he would be able to complete the task during his lifetime.

As we mentioned earlier, several ditches and drains are located on or about the properties.  A common ditch apparently divides the parties' properties.  Testimony by James W. Sparks indicates that another ditch drains into the common ditch.  The common ditch drains north into a detention basin that was created when Interstate 255 was constructed and also drains south into a ditch parallel to Horseshoe Lake Road that empties into the Canal.  Water empties from these ditches through flap gates that open into the area in which the water drains.  Sometimes, however, the water level in the ditches, the Canal, and/or the basin is at a level higher than the flap gates, thereby preventing the flap gates from opening.  When this occurs, water cannot escape the properties.  Eventually, the water in the Canal or the basin or the common ditch recedes to a point where the flap gates are able to open again, and the water that had accumulated on the properties then drains into the Canal.  Were it not for the flap gates, the water level on plaintiffs' and defendants' properties would be that of the level of water in the Canal. 

The dispute between the parties arose when defendants began raising the level of their land.  As stated above, defendants' properties are the lower-lying properties.  As a result, defendants' properties are where the water would begin to accumulate first when the flap gates would not open and the water could not drain.  By filling their land to a level higher than plaintiffs', water would accumulate first in the ditch because the ditch is lower so that the water could flow into the Canal.  The water will then not flow into the Canal until the water in the Canal starts to recede.

On March 7, 1997, plaintiffs filed a complaint against defendants, requesting a temporary injunction and a permanent injunction.  Plaintiffs claimed that defendants' actions cause water to come onto their property, that the lands of plaintiffs have become flooded and damaged, and that plaintiffs have suffered irreparable harm as a result of the activities of defendants.

On April 25, 1997, plaintiffs filed a motion for a temporary injunction, asking the trial court to restrain and enjoin defendants from performing any act or allowing any act to be performed upon their lands that would alter the natural flow of water.  Again, plaintiffs alleged that defendants were flooding and damaging plaintiffs' land by pumping water into a ditch between the adjoining properties, building ditches and flap gates, placing fill dirt on defendants' lands, and building a levy.  Plaintiffs argued that the flooding of their property caused irreparable harm for which they had no adequate remedy at law.

A trial was had without a jury, and by the agreement of the parties, the court personally surveyed the premises. 

At the bench trial, James W. Sparks testified that when the water level is high in the basin, the Canal, or the common ditch, the flap gates do not open and water does not drain.  Because the water cannot flow into the Canal because the water level in the Canal is at a higher level, it spreads out onto the parties' properties.  Sparks testified that defendants' properties are the low-lying property and that, therefore, when the water backs up, it spreads to defendants' properties first.  However, Sparks contended that if defendants are allowed to fill their land, they will no longer be the low-lying property and water will then back up onto plaintiffs' property.  Sparks testified that some of this has already been occurring.

Each party also presented an expert who testified at length about the effects of placing various amounts of fill on defendants' lands or on both plaintiffs' and defendants' lands.  Plaintiffs' expert, Walter Blotevogel, a civil engineer, testified that any bucket of fill placed on land within the triangle bounded by the interstate, the road, and the canal would "displace" a bucket of water and hence reduce the storage area within the triangle.  When asked to assume that 9,000 cubic yards of fill had been placed on defendants' properties, Blotevogel testified that it would raise the level of water in the triangle "a significant amount."  When asked whether he believed that the size of the head of a pin was a significant amount, Blotevogel responded that he believed that any amount would be a significant amount.

Defendants' expert, Jimmy Stuart, did an elevation survey of the area in question.  He testified that for every cubic yard of dirt put on the land, water is displaced.  He estimated that 5,300 cubic yards of fill had been placed on the Gray property and 6,845 cubic yards on the Fournie property.  Stuart admitted that the fill on defendants' properties would "affect flooding;" however, he did not believe that the increase would be significant.

On a May 22, 1998, the trial court entered a judgment, finding as follows:

"That the Defendant [
sic
] directly pumps water onto the Plaintiffs [
sic
] property by means of a ditch, located between the parcels and constructed by the Defendants.

That Defendants have cleaned and maintained a ditch on the northern end of the Elaine Fournie property.

That Defendants have placed fill dirt onto their property at locations which were lower in elevation than the dominant lands.

That Defendants have constructed a berm on the eastern edge of the Grey [
sic
] property."

The order concluded:

"[T]his court finds the testimony of Defendant's [
sic
] expert, James Stuart[,] to be credible[,] in that he stated 1/10 of a foot, the amount created by Defendant's [
sic
] actions, is not significant when dealing with water flow.  ***  Therefore, this court denies Plaintiffs [
sic
] request for removal of dirt, to cease the pumping of water, and to remove said berm.  [Citation.]  Nonetheless, based of [
sic
] the cumulative actions of Defendants, and to prevent significant water accumulation on Plaintiff's [
sic
] property, this court does grant Plaintiffs [
sic
] request for injunctive relief that prohibits Defendants from bringing any more dirt onto their parcel and spreading it upon their property."  

The parties filed cross-motions for posttrial relief.  After a hearing at which the parties introduced additional evidence, the court issued a "partial ruling."  That ruling essentially repeated the four findings of the previous order.  The court also modified its original order and enjoined defendants from pumping water into the Gray ditch when it was already full or overflowing.  With exceptions, the court also enjoined defendants as follows:

"[T]he defendants *** are prohibited from reducing the water storage capacity of any of their parcels at issue because, in doing so [
sic
], when water is present in [a] sufficient amount[,] it is made to flow onto the plaintiffs' property to their detriment.  That means the defendants are prohibited from bringing any type of fill material from off the Fournie or Gray parcels at issue onto said parcels at issue."  (Emphasis omitted.)

The court also enjoined defendants from raising the level of the ground to erect buildings on the property, except with fill that existed on the property prior to October 30, 1997.  In a final order, dated May 24, 2000, the court again clarified its intent and allowed defendants to riprap the basin of their lake so long as they did not "significantly re[]configur[e] the lake's basic size."  The trial judge went on to state, "It is the court's hope that the most recent order clarifying this court's intent will help to deter the continuing litigation between the two parties."

On appeal, defendants argue that the trial court erred in granting a permanent injunction in favor of plaintiffs.  Specifically, defendants contend that plaintiffs' damages are speculative and that the trial court granted the injunction without sufficient proof that specific, substantial injury would occur unless the court entered this injunction.  Regardless of the possible injury caused by defendants' actions, because we believe that plaintiffs have failed to show a clear and ascertainable right in need of protection, we reverse on that ground.

The party seeking a permanent injunction must demonstrate (1) a clear and ascertainable right in need of protection, (2) irreparable harm if injunctive relief is not granted, and (3) no adequate remedy at law.  See 
Hasco, Inc. v. Roche
, 299 Ill. App. 3d 118, 126, 700 N.E.2d 768, 774 (1998).  The plaintiff must establish a clear and palpable violation of his or her rights and substantial injury resulting therefrom.  
Union Drainage District No. 6 of Towns of Bourbonnais & Manteno v. Manteno Limestone 
Co., 341 Ill. App. 353, 367, 93 N.E.2d 500, 506 (1950).

Typically, motions for injunctive relief are reviewed under an abuse-of-discretion standard, and the trial court's decision will not be reversed unless it is against the manifest weight of the evidence.  
Butler v. USA Volleyball
, 285 Ill. App. 3d 578, 582, 673 N.E.2d 1063, 1065 (1996).  There is, however, a distinction in both purpose and proof between a preliminary injunction and a permanent injunction.  
Buzz Barton & Associates, Inc. v. Giannone
, 108 Ill. 2d 373, 385-86, 483 N.E.2d 1271, 1277 (1985).  Preliminary injunctions are designed simply to preserve the status quo pending the resolution of the merits of the case.  
Postma v. Jack Brown Buick, Inc.
, 157 Ill. 2d 391, 397, 626 N.E.2d 199, 202 (1993).  In contrast, permanent injunctions are designed to extend or maintain the status quo indefinitely when the plaintiff has shown irreparable harm and has shown that there is no adequate remedy at law.  See 
American National Bank & Trust Co. of Chicago v. Carroll
, 122 Ill. App. 3d 868, 881, 462 N.E.2d 586, 595 (1984).  When granting permanent injunctive relief, the trial court, by definition, necessarily decides the plaintiff's success on the merits of the case.  
Butler
, 285 Ill. App. 3d at 582, 673 N.E.2d at 1066.  "While care should be used in granting injunctions to avoid prospective injuries, there is no requirement that the court must wait until the injury occurs before granting relief."  
Fink v. Board of Trustees of Southern Illinois University
, 71 Ill. App. 2d 276, 282, 218 N.E.2d 240, 244 (1966).

In this case, plaintiffs are essentially arguing that they have a right to prevent defendants, as the owners of lower-lying property, from placing fill on their land and building other structures because, by so doing, whenever the water level in the Canal or the basin or the common ditch becomes too high and the flap gates do not open and water begins to back up on the properties, water that would have normally accumulated on defendants' properties will now accumulate on plaintiffs' property.  Plaintiffs argue that defendants' actions constitute an "alteration of the natural flow of water" and that the "servient owner must accept the natural flow of surface water from the dominant tract and [that defendants have] no right to stop or impede it" and that, therefore, defendants should be enjoined from doing so.

We agree with plaintiffs that the law in Illinois prohibits the owner of a servient tenement from impeding, by artificial structures, the natural flow of surface water from the dominant estate.  See 
People ex rel. Witte v. Big Creek Drainage District No. 2
, 159 Ill. App. 3d 576, 512 N.E.2d 62 (1987).  In addition, the law prohibits the owner of a servient tenement from interfering with the dominant estate's drainage rights.  See 
Bodenschatz v. Parrott
, 153 Ill. App. 3d 1008, 506 N.E.2d 617 (1987).  However, we do not believe that defendants' actions are interfering with any of these rights.

It is clear, after a review of the record, that the Canal is the real servient land in this case.  If the Canal is able to handle the water, the flap gates would work properly and water would never accumulate on the parties' lands.

Defendants in this case are in no way interfering with the Canal, the flap gates, or the drainage ditches on the land.  Defendants are not building a dam, and they are not impounding the water.  Defendants are simply increasing the level of their land while in no way interfering with the dominant estate's drainage rights.  Furthermore, defendants are not changing the natural flow of surface water or 
causing 
it to go 
back
 upon the land.  

Water seeks its level.  Water only accumulates upon the parties' lands when the water level in the Canal is equal to or above the level of the water on the parties' lands.  Defendants' actions do not affect the level of water in the Canal, and defendants' actions in no way interfere with the natural flow of water or the drainage of water into the Canal.  That is why this is a case about water displacement and not a case about impeding water's natural flow or interfering with one's drainage rights.  The improvements in the form of structures and the rise in elevation on defendants' properties have an effect of merely displacing the water in volumes equal to the volume of the improvement or the rise in elevation.  The parties cite to no law, and we have found none, that prohibits a landowner from engaging in an act that merely results in water displacement while the same act does not impede the natural flow of water or interfere with one's drainage rights.

A finding to the contrary would produce absurd results.  It would allow an upper landowner to sue a lower landowner for sandbagging around his or her home during the time of a flood because the lower landowner's actions result in the displacement of water to the detriment of the upper landowner.  It would discourage any kind of improvement, such as building a warehouse, constructing a landfill, or building a new subdivision, on low land because adding improvements may displace huge volumes of water to the detriment of upper landowners.

In the instant case, because defendants' actions only result in the displacement of water and do not result in impeding its natural flow, plaintiffs have failed to show that they possess a clear and protectable interest thereby entitling them to an injunction.  Accordingly, their request for an injunction should have failed, and the trial court's decision otherwise constitutes error.

Accordingly, for these reasons, we reverse the order granted by the trial court of Madison County.

Reversed.

HOPKINS and KUEHN, JJ., concur.

NO. 5-00-0382

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

___________________________________________________________________________

JAMES W. SPARKS and MARGARET A. SPARKS, )  Appeal from the

)  Circuit Court of

     Plaintiffs-Appellees, )  Madison County.

)

)  No. 97-CH-108

) 

DONALD E. GRAY, VIRGINIA GRAY, and )

ELAINE FOURNIE, )  Honorable 

)  Ann Callis,

     Defendants-Appellants. )  Judge, presiding.

___________________________________________________________________________

Opinion Filed
: September 17, 2002

___________________________________________________________________________

Justices
: Honorable Thomas M. Welch, J.

Honorable Terrence J. Hopkins, J., and

Honorable Clyde L. Kuehn, J.,

Concur

___________________________________________________________________________

Attorney
 Curtis L. Blood, 1602 Vandalia, Collinsville, IL  62234-4459

for
 

Appellants
 

___________________________________________________________________________

Attorney
 Harry J. Sterling, #6 Canty Lane, Fairview Heights, IL  62208

for
 

Appellees
 

___________________________________________________________________________

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 09/17/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.