NOTICE

Decision filed 11/04/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 220328-U

NO. 5-22-0328

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| JOSHUA BARRETT, Personal Representative of the Estate of David Barrett, Deceased, | ) ) ) | Appeal from the Circuit Court of Edgar County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 21-L-14 |
| BRUCE BARRETT, | ) ) | Honorable Nancy S. Fahey, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE VAUGHAN delivered the judgment of the court.
Presiding Justice Boie and Justice Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's order granting defendant's preliminary injunction and allowing defendant to farm his deceased brother's land was an abuse of discretion where defendant had no clear right in need of protection as a matter of law.

¶ 2    Plaintiff, Joshua Barrett, personal representative of the estate of David Barrett, deceased, appeals the trial court's order granting a request by defendant, Bruce Barrett, for a preliminary injunction allowing him to farm his deceased brother's land. For the following reasons, we reverse.

¶ 3                                    I. BACKGROUND

¶ 4    On January 22, 2021, David Barrett died. Following his death, a probate estate was opened naming Joshua Barrett as the personal representative of David's estate.

1

¶ 5    Prior to David's death, David and his brother, Bruce, were each 50% owners of Barrett Brothers, a partnership centered around farming. The partnership agreement (Agreement), most recently revised in 2011, contained no copy of the capital contributions, unlike a prior version that listed the partnership assets. Article IX of the Agreement advised how the partnership would be handled following the death of one of the principals, specifically allowing the surviving partner to purchase the deceased partner's one-half interest. The partnership held life insurance policies in the amount of $250,000 for each partner that would be used to purchase the interest. The Agreement also provided how the purchase price would be determined, what would be included to determine the market value, and how the appraiser would be selected. The Agreement further stated:

> "3. <u>TRANSFER OF PARTNERSHIP INTEREST–PAYMENT OF PURCHASE PRICE</u>. Upon the death of a partner, the surviving partner shall purchase the entire partnership interest of the deceased partner from his estate and the estate shall sell such interest to the surviving partner. The personal representative of the deceased partner shall proceed with the probate of the estate and shall promptly transfer title of the decedent's partnership interest to the surviving partner. The surviving partner shall collect the proceeds of the insurance policies on the life of the deceased partner, and upon receipt of title to the decedent's partnership interests, shall pay such proceeds to the deceased partner's personal representative in payment for the decedent's interest in the partnership."

¶ 6    The Agreement further allowed, if the life insurance payment was insufficient to pay one-half of the market value, the surviving partner was to "give a note to the decedent's personal representative in the amount necessary to pay the purchase price in full." The surviving partner's note would be payable over 10 years with an interest rate 2% lower than the commercial loan rate

of the local bank. If the value was less than the life insurance proceeds, the overage would be split between the surviving partner and the deceased partner's estate.

¶ 7 The Agreement further provided a right to the surviving partner to continue the business stating:

"5. RIGHT OF SURVIVORS TO CONTINUE BUSINESS. It is the intent and purpose of this Agreement, upon the death of a partner and subject to the payment of the purchase price as herein provided, that the surviving partner may continue the business as his own. The surviving partner shall be under no duty to account to the deceased partner's heirs or his personal representative; he shall be free to conduct the business under the same name and at the same address; and he shall assume all partnership obligations and shall indemnify and save harmless the decedent's heirs and personal representatives from such obligations.

The surviving partner shall be entitled to farm any land owned by the deceased partner at the time of his death for a term of five (5) years upon the same terms and conditions as the ground was being farmed as of the date of death. If the date of death for the deceased partner is before April 15th, his estate shall be entitled to none of the partnership interest in that year's crop. The estate will be reimbursed for one half (1/2) of all prepaid farming expenses for the year, including, but limited to, seed, fertilizer[,] and chemicals. If the date of death for the deceased partner is after April 15th in a given year, his estate shall be entitled to receive one-half (1/2) of that year's crop and shall be responsible for one-half (1/2) of that year's crop expenses."

¶ 8 The final paragraph of the Agreement included the following language:

3

"9. <u>BENEFIT</u>. This Agreement shall bind the partners and their respective heirs, executors, administrators, and assigns, but nothing herein shall be construed as an authorization of any partner to assign his rights or obligations hereunder. Each partner, in furtherance hereof, shall execute a Will directing his Executor to perform this Agreement and to execute all necessary documents in implementation thereof, but the failure to execute such a Will shall not affect the rights of any partner or the obligations of any estate as provided in this Agreement."

The Agreement was signed by the partners, as well as their spouses.

¶ 9     On October 2, 2021, the estate and David's widow, Lee Barrett, issued notices of termination of tenancy of farmland to Bruce. The notices included 10 parcels of land and required Bruce to "quit and deliver up possession of the farmland *** at the end of the lease year *** not later than February 28, 2022."

¶ 10     On November 12, 2021, Joshua Barrett, as the representative of David Barrett's estate, filed suit against Bruce Barrett, claiming damages stemming from Bruce's alleged breaches of the agreement. On or about December 20, 2021, Bruce filed an answer and counterclaims against the estate. On January 10, 2022, the estate filed its answer to the counterclaim and listed affirmative defenses related thereto. The underlying issues in the pleadings are not at issue on appeal. However, relevant facts revealed that the partnership's market value was in excess of $500,000, the $250,000 life insurance policy payment was never issued to David's estate, no note for the excess market value was provided to David's estate, and, in fact, no payment was ever made by Bruce to David's estate to pay for David's partnership interest. The facts also revealed, despite issuing no payment to David's estate, immediately following David's death, Bruce removed all the money from the partnership bank account, the contents of a safety deposit box held by the

4

partnership, closed the dealership owned by the partnership, and titled all the partnership's personal property assets in a different name.

¶ 11 On April 14, 2022, Bruce filed a combined verified motion for an emergency temporary restraining order and a verified application for preliminary injunction in two separate counts. Both counts claimed that the Agreement provided Bruce with an ascertainable right to farm David's land based on the language allowing the surviving partner to farm any land owned by the deceased partner at the time of his death for five years. Bruce alleged that the three notices of termination of tenancy of farmland issued by Lee and David's estate were related to 10 parcels of land owned by David and/or his surviving spouse that were previously farmed as part of the Agreement and upset the status quo as Bruce farmed the land in 2021 pursuant to the Agreement. Bruce further claimed, "the Estate had no right to serve a notice of termination of the lease."

¶ 12 Bruce also alleged that the money from the 2022 crop was supposed to be used as part of the buyout and expressed concern at anyone else's ability to properly tend the crop since all the crop proceeds would belong to Bruce. Bruce alleged that he was likely to prevail based on the Agreement language and would suffer irreparable harm without the injunctive relief as it undermined the surviving partner's ability to generate income from the land to fund the eventual buyout and would lead to a mitigation of damages claim against him. Finally, Bruce stated he lacked an adequate remedy at law and no other timely and efficient remedy was available to prevent the estate from violating his right to enter upon and farm the land in question under the Agreement. The pleading claimed that irreparable harm was not speculative because farm season was fast approaching, and the estate made it clear that Bruce would not be allowed on the property to farm that season. Both counts requested retention of the status quo, *i.e.*, allowing Bruce to

continue farming the land and enjoining the estate from prohibiting Bruce from farming the land or allowing anyone else to farm the land.

¶ 13    The estate filed its response on April 19, 2022, noting that the notices of termination of the farm leases were sent in October 2021 and "different farmers then took possession through a new farm lease and purchased farm inputs and [were] ready to start planting." The response then listed numerous complaints about Bruce's failure to follow the Agreement, share information, or negotiate in good faith, and further noted that Bruce fired David's son, Jake Barrett, from the partnership. The response alleged that David and Bruce removed the real property from the partnership in 2018 and each took personal ownership of the property. David's land included 10 parcels of farmland, including the partnership's principle place of business (the Seed House), and David's parcels were owned thereafter either individually by David or in joint tenancy with his wife, Lee. Following David's death, the land previously owned solely by David was transferred to a family trust.

¶ 14    The response further alleged that after the real property was removed from the partnership in 2018, the partnership leased David's farmland through year-to-year oral farm leases, and those leases were the bases of the termination notices served on Bruce on October 29, 2022. The response claimed that Bruce was not a valid lessee, a preliminary injunction could not be entered, and Jake was planning to farm the land for the 2022 season. The estate further argued that pursuant to the Illinois Uniform Partnership Act of 1997, any terms in the Agreement binding anyone other than one of the partners were unenforceable.

¶ 15    Oral arguments were presented to the trial court on April 20, 2022. At that time, the parties presented arguments consistent with their pleadings, and Bruce's counsel conceded that "the partnership at one time owned some land and then they distributed that to the partners."

6

¶ 16    On April 27, 2022, the trial court issued an order finding that Bruce demonstrated a fair question as to the elements of his request for injunctive relief finding that Bruce had a protectable right under the Agreement and would have irreparable harm because Bruce had "an absolute right for a five (5) year period to farm the land in question." The court found Bruce had no adequate remedy at law because farming was a monetary and emotional investment and the "intangibles involved in farming and the monetary gains and losses [could not] be replicated at some future time." The court stated, "In this Court's opinion, whether fair or not, [Bruce] has the absolute right under the Agreement to farm the land in question and any remedy at law would be inadequate to protect that." The court further found a likelihood of success on the merits based on the use of the word "shall" in the Agreement and noted the mandatory nature of that word. The court found, "the status quo initiated after David Barrett's death regarding the farming of this property" would remain in place for the 2022 crop year. The court further specifically found "the benefits in granting the preliminary injunction for the 2022 crop year outweigh[ed] any possible injury the injunction will cause." Thereafter, the court granted Bruce's application for a temporary injunction allowing Bruce to "farm for the 2022 crop year each parcel of land owned by the decedent, David Barrett, at the time of his death and farmed by [Bruce] pursuant to the Partnership Agreement, during the 2021 farm year." The order required Bruce to secure a bond in the amount of $275,000. The estate timely appealed.

¶ 17                                    II. ANALYSIS

¶ 18    On appeal, the estate argues five issues: (1) whether Bruce demonstrated a fair question as to each preliminary injunction element; (2) whether Bruce's allegations were sufficient to support his pleading and warrant the circuit court's issuance of a preliminary injunction; (3) whether the circuit court's interpretation and construction of the 2011 partnership agreement was correct and

7

proper; (4) whether the circuit court erred or otherwise abused its discretion by granting Bruce's requested preliminary injunction; and (5) whether the circuit court erred in failing to conduct an evidentiary hearing prior to issuing the preliminary injunction. Bruce argues that the trial court's order granting the temporary injunction was proper.

¶ 19 In order to obtain a preliminary injunction, the moving party must show "(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). " 'On appeal, we examine only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights.' " *Id.* (quoting *People ex rel. Klaeren v. Village of Lisle*, 202 Ill. 2d 164, 177 (2002)). While we review the trial court's order granting or denying the preliminary injunction for an abuse of discretion (*id.* at 62-63), the "construction, interpretation, or legal effect of a contract" are questions of law reviewed *de novo. Freeburg Community Consolidated School District No. 70 v. Country Mutual Insurance Co.*, 2021 IL App (5th) 190098, ¶ 79.

¶ 20 We start by addressing Bruce's "clearly ascertained right in need of protection." The trial court found this element was established because Bruce had "an absolute right for a five (5) year period to farm the land in question." This finding stemmed from the Agreement's language allowing Bruce to farm David's land following his death. While numerous arguments are raised on appeal, at the preliminary-injunction stage of proceedings, "controverted facts on the merits of the case are not decided." *Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 156 (1992). As such, we limit our review to the uncontroverted facts and find one issue dispositive of the matter.

8

¶ 21  Here, there was no dispute that the partnership no longer owned the real property that was used for farming. The parties agreed the real property was removed from the partnership in 2018 and David titled some of his property solely in his own name and some jointly with his spouse, Lee. The parties further agreed that after 2018, David's land was leased to the partnership. David's estate and David's surviving spouse, Lee, terminated the farm leases in October 2021 via written termination notices requiring Bruce to "quit and deliver up possession of the farmland *** at the end of the lease year ending not later than February 28, 2022." It was these notices that were the basis of Bruce's April 14, 2022, request for a preliminary injunction.

¶ 22  Bruce claimed, *inter alia*, the estate had "no right to serve a 'Notice of Termination' upon the existing member of the Partnership and prevent the Partnership from entering upon and farming the property." In response, the estate contended, *inter alia*, that the future use of the farmland contemplated in the Agreement was prohibited by section 103(b)(9) of the Uniform Partnership Act (1997) (Act) (805 ILCS 206/103(b)(9) (West 2020)) after the farmland was removed from the partnership in 2018.

¶ 23  Section 103 of the Act provides nonwaivable provisions that state a "partnership agreement may not: *** (9) restrict the rights of a person, other than a partner and transferee of a partner's transferable interest under this Act." *Id.* After 2018, David's real property was titled in either his own name or that of his spouse, Lee. Upon David's death, the real property no longer belonged to "a partner" and was instead owned by Lee and David's estate. As the subsequent owners, Lee and David's estate had the authority to issue the notices terminating the farmland tenancy, and therefore, the notices were lawful.

¶ 24  Bruce also argues that because the wives signed the Agreement, Lee was bound by the language therein. The Agreement specifically stated that David and Bruce's "wives have also

9

signed this Agreement to show their knowledge and acquiescence in the terms thereof." However, neither Lee nor Bruce's wife, Angela, were partners of the partnership. The Agreement confirms that only Bruce and David were partners, with each owning a one-half interest in the partnership. The signatures binding them to the Agreement, based solely on their status as wives, are contrary to the section 103(b)(9) prohibition restricting rights of persons other than a partner in a partnership agreement. Equally contrary to the statute is the language found in paragraph 9 of the Agreement which attempts to bind the partners' "respective heirs, executors, administrators, and assigns" and create an estate "obligation" to enforce the Agreement.

¶ 25     Agreements that attempt to circumvent statutory prohibitions are contrary to law and must be set aside. *James v. James*, 14 Ill. 2d 295, 305 (1958); *In re Marriage of Haller*, 2012 IL App (5th) 110478, ¶ 44. Our State's public policy is reflected in its constitution, its statutes, and its judicial decisions. *O'Hara v. Ahlgren, Blumenfeld & Kempster*, 127 Ill. 2d 333, 341 (1989). Courts will not enforce agreement language contrary to public policy; however, "a contract should not be deemed illegal unless it is expressly contrary to the law or public policy." *Braye v. Archer-Daniels-Midland Co.*, 175 Ill. 2d 201, 215 (1997). The nonwaivable provisions of the Act specifically prohibit any partnership agreement from "restrict[ing] the rights of a person, other than a partner and transferee of a partner's transferable interest under this Act." 805 ILCS 206/103(b)(9) (West 2020). Here, the partnership agreement restricts the rights of each partner's spouse, heirs, executors, administrators, and assigns, and further attempts to restrict the rights of a deceased partner's estate. As such, those provisions are unenforceable, as a matter of law.

¶ 26     On appeal, in an effort to avoid the prohibitions set forth in section 103(b)(9), Bruce claims that Lee was "unquestionably considered a 'transferee of a partner's transferable interest'." We disagree. First, we note that Bruce provided no argument in support of this claim. Perhaps he

10

recognized the fallacy of such argument under both the Act and the Agreement. Under the Act, a "partner's interest in the partnership" is "all of a partner's interests in the partnership, including the partner's transferable interest and all management and other rights." 805 ILCS 206/101(i) (West 2020). Here, the Agreement's language in paragraphs 1, 3, and 6 specifically provided the surviving partner with the entirety of the partnership by transferring the deceased partner's one-half interest therein upon payment of one-half of the market value of the partnership to the deceased partner's estate.

¶ 27 While Bruce claims the estate never transferred David's partnership interest to him, transfer was neither necessary, nor possible. Bruce's own pleadings alleged that he was now "the existing member of the [p]artnership." Further, the pleadings revealed that Bruce took custody of all the partnership assets following David's death. As Bruce received all of David's partnership interest upon David's death, Lee cannot be a "transferee of the partnership interest."

¶ 28 Bruce also contends that the Agreement itself was a lease. We disagree. At the time the Agreement was entered on December 8, 2011, the farmland was owned by the partnership and therefore no such lease would be necessary. This fact elucidates the lack of any lease terms contained within the Agreement.

¶ 29 It is well established that an injunction cannot provide property rights to one who has no legal right to the property. See *Pullem v. Evanston Young Men's Christian Ass'n*, 124 Ill. App. 3d 264, 268 (1984) ("Illinois case law recognizes that a tenant who retains possession of a leasehold after termination of the lease has no protectable property interest in the leasehold."). Bruce's ascertainable right to farm David's land was nonnegotiable prior to 2018; however, that right was greatly diminished after the partners agreed to remove the farmland from the partnership. Thereafter, the surviving partner's right to farm the land was dependent on a lease, whether oral

11

or in writing, allowing continuance thereof. No such writing was submitted, and pursuant to the statute of frauds, any such oral lease was limited to one year. 740 ILCS 80/1 (West 2020). Once Lee and David's estate issued the notices terminating the farmland leases, Bruce's ascertainable right to farm the land existed only until the termination date contained in the notice, *i.e.*, February 28, 2022, passed.

¶ 30    By the time Bruce filed his April 14, 2022, request for injunctive relief, he had no ascertainable right to the property as the notice terminated any right Bruce previously had to farm the land over a month earlier. Preliminary injunctions preserve the status quo until the merits of the case have been resolved. *Sparks v. Gray*, 334 Ill. App. 3d 390, 396 (2002) (citing *Postma v. Jackson Brown Buick, Inc.*, 157 Ill. 2d 391, 397 (1993)). The status quo preserved is "the last, actual, peaceable, uncontested status which preceded the pending controversy." *Postma*, 157 Ill. 2d at 397. It is undisputed that no dispute was lodged regarding the notices prior to Bruce's filing. Therefore, the status quo at the time of Bruce's filing was that Bruce had no right to farm David's land.

¶ 31    Bruce has no clear and ascertainable right to farm David's land. As such, a likelihood of success on the merits is nearly impossible, made even more so by the fact that Bruce's requested equitable relief was based on Agreement language specifically prohibited by a nonwaivable provision of law. 805 ILCS 206/103(b)(9) (West 2020). For these reasons, we find the trial court's order granting Bruce's injunctive relief was error as a matter of law.

¶ 32                                    III. CONCLUSION

¶ 33    For the foregoing reasons, we vacate the trial court's findings and reverse its order granting defendant's petition for injunctive relief.

¶ 34    Reversed.