2024 IL App (1st) 242546-U

No. 1-24-2546

Order filed December 30, 2024

THIRD DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JEREMIAH LESURE, | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Petitioner, | ) | |
| | ) | No. 2024 CH 10766 |
| v. | ) | |
| | ) | Honorable |
| ILLINOIS HIGH SCHOOL ASSOCIATION, | ) | Sophia Hall, |
| | ) | Judge Presiding. |
| Defendant-Respondent. | ) | |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justice Reyes concurred in the judgment.
Presiding Justice Lampkin specially concurred.

**ORDER**

¶ 1     *Held*:  The circuit court did not abuse its discretion when it denied plaintiff's motion for a temporary restraining order and declaratory relief.

¶ 2     Plaintiff Jeremiah LeSure appeals the circuit court's denial of his complaint seeking a temporary restraining order (TRO) against defendant, the Illinois High School Association (IHSA), to require defendant to confirm plaintiff as eligible to play basketball for his high school and to be permanently enjoined from enforcing and applying one of its policies and

some of its bylaws. For the reasons below, we affirm the circuit court's denial of plaintiff's motion for declaratory and injunctive relief.

¶ 3                                    I. BACKGROUND

¶ 4        The facts underlying this appeal are undisputed. Plaintiff is an 18-year-old high school student who, in the 2023-2024 school year, attended and played basketball for Plainfield South High School (PSHS). Plaintiff lived with his parents while playing for PSHS. Plaintiff decided to transfer to St. Laurence High School (SLHS) for the 2024-2025 academic year to play basketball there. In an attempt to satisfy IHSA's residency requirements to attend and play basketball at St. Laurence,[1] plaintiff's parents appointed Nathan Kates, who lived in the district, to be plaintiff's short-term legal guardian. Plaintiff then moved in with Kates. The guardianship terminated on plaintiff's 18th birthday.

¶ 5        IHSA facilitates and determines eligibility for certain intermural high school sporting events, including high school basketball. After plaintiff moved, SLHS contacted IHSA seeking a determination as to plaintiff's eligibility. SLHS asserted that plaintiff was eligible under IHSA bylaw 3.045, which allows a student to be eligible to play if the student transfers from one high school to another in conjunction with, among other things, a court-ordered change in guardianship, so long as the IHSA executive director determined that the circumstances precipitating the move were "completely beyond the control of" the student, his parents/guardians, and the schools involved. IHSA found plaintiff to be ineligible, as the circumstances were not beyond the control of the relevant entities, but explicitly limited its

---

[1] SLHS is a private Catholic school. IHSA bylaw 3.031 requires students who have not attended private schools for a significant portion of their schooling and who does not have at least one parent who attended the private school, to live within the public school district in which the private school is located or within 30 miles of the private school.

ineligibility determination to eligibility under Bylaw 3.045. IHSA informed SLHS that "[i]f facts or circumstances change, you must contact the IHSA Executive Director because this could affect or change the ruling." SLHS appealed the decision, and the IHSA Board sustained the decision on October 16, 2024.

¶ 6       On November 28, 2024, plaintiff turned 18. The next day, he informed his school that Kates' guardianship over him had terminated and that plaintiff had moved out of Kates' home and moved into an apartment he had leased, where he was living with neither a parent nor a legal guardian. Plaintiff performed the necessary steps to enroll with SLHS as a person of legal age. SLHS informed the IHSA executive director, Craig Anderson (Anderson), of the change in plaintiff's circumstances. SLHS sought an eligibility determination for plaintiff under Bylaw 3.043.1, which states that a student who transfers attendance from one high school to another shall be ineligible unless:

> "The student transfers attendance in conjunction with a change in residence by both the student and his or her parents, custodial guardian, surviving parent (in the case of a student with one deceased parent), or guardian from one public high school district to a different public high school district."

¶ 7       Anderson emailed SLHS on December 6, 2024, stating that a "modified ruling" would need to be reviewed and approved by the IHSA Board of Directors, but added the following:

> "In review of the updated information you have shared, I think the Board would need to know more about the status of Jeremiah as an emancipated student. Documents to forward for consideration would be those found in IHSA Board Policy 3. Please review that list and send what Jeremiah has available.

Also, it appears that the lease agreement for Jeremiah's new residence is written with Jalen Brown as a resident. Any information you can share on the relationship of Jalen Brown with Jeremiah is appreciated."

¶ 8   "Board Policy 3" refers to a section of IHSA's "Administrative Procedures, Guidelines and Policies" that is included in the record. Section 3 of that document defines an emancipated student as one who has lived in Illinois for at least a full calendar year and "is totally self-supporting." It advises that "[t]o help determine if a student is self-supporting, the Executive Director may require submission of documentation," and lists some non-exclusive examples of documentation that might be requested.

¶ 9   SLHS replied the same day, stating that they would get the necessary information and asking whether the school "need[ed] to request another appeal with the Board of Directors or [whether it could] just send all the documentation for them to review." On December 9, 2024, Anderson replied: "There will not be another appeal hearing. The Board will review the additional documentation at a future meeting."

¶ 10   On December 10, 2024, SLHS sent a lengthy email explaining that 1) plaintiff was an adult and could not be emancipated on account of "already being free," therefore it was impossible to comply with IHSA Board Policy 3's request for "copies of evidence relied upon by the school in determining that the student was an emancipated resident of the district for attendance purposes;" 2) plaintiff qualified for eligibility under bylaw 3.034.2 as an enrolled student who had reached the age of majority; 3) SLHS's "appeal on behalf of [plaintiff] under Bylaw 3.043 (transfer in conjunction with a move) is NOT made on behalf of [plaintiff] as either a minor or emancipated minor, but rather as a student of legal age for all purposes." SLHS concluded by asking, "should this be presented as a new petition by [SLHS] on behalf of a newly-formed

family unit, namely [plaintiff] as an adult, as opposed to some sort of reconsideration of the earlier petition which [*sic*] the IHSA addressed Bylaw 3.045 as a change in guardianship? If you do not believe it is a new appeal, when can the Board of Directors review this information?"

¶ 11 On December 11, 2024, Anderson responded, informing SLHS that bylaw 3.034.2 applies only to "a student who has attended one high school for their entire career and has been accepted for enrollment by the school as a student having reached the age of majority," which he did not believe to be applicable to plaintiff, as plaintiff had not attended SLHS for his entire high school career. Anderson again referred to Board Policy 3 and provided the policy in the email. Anderson stated, "In my opinion, if [plaintiff] is no longer residing with parents or a legal guardian, his only opportunity to meet the residence by-law is to prove emancipation. But this would be subject to the board's interpretation." Anderson informed SLHS that the information provided would be reviewed at the Board's next meeting on January 15, 2025.

¶ 12 On December 13, 2024, SLHS informed Anderson that it viewed plaintiff reaching the age of majority as the subject of a new eligibility ruling under 3.043.1 for a student who has moved. SLHS nonetheless attached a photo of plaintiff taken with Brown outside their apartment, a photo of plaintiff's bedroom at the new apartment, a screenshot of a mobile banking application showing checking and savings balances without any identifying information, proof of plaintiff that plaintiff's tuition was paid in full, and declarations from his parents and former short-term legal guardian. SLHS implored Anderson for a ruling "as soon as possible" and stated that "[w]e still feel that you would be well within your rights to make a new ruling yourself since this is a different circumstance from the initial appeal." SLHS concluded the body of the email by stating: "If you disagree, we would appreciate it if the Board of Directors can review the

additional documents we sent prior to the January board meeting." The record contains no further communications between Anderson and SLHS.

¶ 13    Plaintiff's complaint was filed December 17, 2024. In it, he states that between the date of the complaint's filing and January 15, 2025, SLHS has about ten games scheduled, including a 32-team regional tournament. Plaintiff does not explicitly state that no eligibility decision has been rendered, but the record contains no evidence that a decision was made. The circuit court orally denied plaintiff's motion for a temporary restraining order on December 17 and issued its written order December 19, 2024. Plaintiff timely appealed on December 20, 2024.

¶ 14                              II. ANALYSIS

¶ 15                          A. Requested Remedies

¶ 16    As a preliminary matter, we must question whether plaintiff's requested remedies are appropriate for a temporary restraining order. In its motion below, plaintiff requested of the court:

> "(a) That the IHSA be temporarily, preliminarily and permanently enjoined and estopped from refusing to confirm Jeremiah eligible, or declaring Jeremiah ineligible from competing and participating in the St. Laurence IHSA Boys Basketball games under Bylaw 3.043.1;
>
> (b) That the IHSA be temporarily, preliminarily and permanently enjoined and estopped from applying concepts of "emancipation," including to Illinois citizens of legal age;
>
> (c) That the IHSA be temporarily, preliminarily and permanently enjoined from tying [*sic*] to enforce Bylaws 6.022 and 6.023 and that such Bylaws be declared void as against public policy; and

(d) Jeremiah be awarded the costs it [*sic*] incurred in prosecuting this action and such other further relief as this Court may deem just and proper."

¶ 17    A preliminary injunction's "purpose is simply to preserve the status quo pending a decision on the merits of the case." *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 397 (1993). "The status quo to be preserved by a preliminary injunction is the last, actual, peaceable, uncontested status which preceded the pending controversy." *Id*. "Because preliminary injunctions are improper where they tend to change the status quo of the parties rather than preserve it," granting a TRO under such circumstances would be an abuse of discretion. *Id*. at 397-98.

¶ 18    Although there seemed to be some question of whether this matter was a continuation of plaintiff's previous eligibility inquiry or whether it is a new, separate inquiry, we need not determine that question, as the result is the same in either instance. If we take the age of majority eligibility inquiry to be a new and separate dispute, the status quo would be the result after the previous dispute: that plaintiff is ineligible to play. If we take the age of majority eligibility inquiry to be an extension of the original inquiry associated with plaintiff moving, the status quo would be plaintiff's status before the move: eligible to play, perhaps, but at his former school. In either case, the requested remedies would change the status quo rather than preserve it, so, per our supreme court's guidance, it would have been an abuse of discretion to grant the motion. As such, we cannot say it was an abuse of discretion to deny it.

¶ 19                            B. Plaintiff's Arguments

¶ 20    On appeal, plaintiff relies entirely on the facts and arguments submitted before the trial court and argues that he made a sufficient demonstration to warrant the granting of his motion for a TRO.

7

¶ 21　　　　A party seeking an injunction must demonstrate "(1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case." *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 62 (2006). "On appeal, we examine only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights." *Id.* "A decision to grant or deny a preliminary injunction is generally reviewed for abuse of discretion." *Id.* "Stated differently, the only question before the court of review is whether there was a sufficient showing to sustain the order of the trial court." *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk and Western Railway Co.*, 195 Ill. 2d 356, 366 (2001). Plaintiff asserts that where the circuit court made no findings of fact and ruled only on a question of law, the standard of review is *de novo*. However, plaintiff does not explain how the issue before the lower court was one of pure law, considering the need to make factual determinations about the circumstances that present likely irreparable harm to plaintiff. Our review will be under an abuse of discretion standard. "An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *In re Marriage of Heroy*, 2017 IL 120205, ¶ 24.

¶ 22　　　　The first three showings required of plaintiff below have been clearly satisfied. Plaintiff's emergency motion below established a right in need of protection by laying out undisputed facts establishing that plaintiff is a high school athlete seeking to participate in games under IHSA's purview and therefore is a third-party beneficiary with rights under the contract, in the form of IHSA's constitution and bylaws, between IHSA and SLHS. This right, specifically with regard to participation in athletic competitions under IHSA's purview has been previously

recognized by this court. *Hutsonville Cmty. Unit Sch. Dist. No. 1 v. Illinois High School Ass'n*, 2021 IL App (5th) 210308, ¶ 17 ("[T]he IHSA's promise to render certain performance under its constitution and bylaws involves allowing eligible students to participate in [their sporting events] as it would be impossible for a member school to participate *** without student athletes."). Plaintiff has shown irreparable injury by establishing that plaintiff has a limited window of opportunity to participate in high school athletics, stands to benefit from his participation, and that a number of games will take place between the motion for a TRO and the date of the IHSA Board's next meeting. Plaintiff has demonstrated that there is no adequate remedy at law, as, if the matter is left to IHSA's administrative process, plaintiff will not be able to participate in the aforementioned games or, if he does, SLHS will be subject to IHSA sanctions. The most salient question before us is whether plaintiff established a likelihood of success on the merits of the case, which requires examination of plaintiff's arguments in the motion below.

¶ 23                                1. Lack of Sufficient Record

¶ 24       Plaintiff's arguments below universally rely upon the premise that plaintiff possesses rights as an intended third-party beneficiary of SLHS's contract with IHSA, where that contract is IHSA's constitution and bylaws that bestow certain privileges on members that cannot exist in the absence of student athletes such as plaintiff. Despite this, plaintiff failed to include the entirety of the contract in the supporting record.

¶ 25       "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "Any doubts which

9

may arise from the incompleteness of the record will be resolved against the appellant." *Id*. at 392. With these limitations in mind, we now consider plaintiff's claim of error.

¶ 26     Here, plaintiff, as the appellant, has failed to provide the contract in its entirety, therefore we cannot glean the intent of the parties. We cannot know if the missing parts of the relevant contract require a different result than that apparent from the selections provided. We must construe the contract such that the actions of which plaintiff complains were the intent of the contract and, accordingly, since IHSA has acted in compliance with the contract, any right plaintiff may have under the contract has not been violated by IHSA. Nonetheless, had plaintiff included the entire contract, the result would be no different.

¶ 27                    2. Plaintiff's Rights Under IHSA's Constitution and Bylaws

¶ 28     As IHSA's constitution and bylaws are publicly available on its website, we hereby take judicial notice of those documents. *People v. Mata*, 217 Ill. 2d 535, 539 (2005) (a reviewing court may take judicial notice of matters that are readily verifiable from sources of indisputable accuracy). Plaintiff makes numerous arguments regarding his rights under this contract, but the foremost are that he should have been deemed eligible under bylaws 3.034.2 and 3.043.1.

¶ 29     "The primary objective in construing a contract is to give effect to the intent of the parties." *Gallagher v. Lenart*, 226 Ill. 2d 208, 232 (2007). "Moreover, because words derive their meaning from the context in which they are used, a contract must be construed as a whole, viewing each part in light of the others." *Id*. at 233. "The intent of the parties is not to be gathered from detached portions of a contract or from any clause or provision standing by itself." *Id*. As the construction of a contract is a question of law, our standard of review is *de novo*. *Id*. at 219.

¶ 30     Bylaw 3.034.2 reads in relevant part as follows:

"Students who have attended one school for their entire high school career and whose parents, custodial parent or court appointed guardian moves from the district or community traditionally served by that school following the student's completion of the eleventh (11th) grade, may remain in that member school and retain eligibility regarding residence for the twelfth (12th) grade, provided: * * *."

The bylaw goes on to provide further necessary qualifications for eligibility under this provision, but the above portion is sufficient to show that plaintiff is not eligible to play for SLHS under this bylaw. The bylaw only applies to students "who have attended one school for their entire high school career" and then moves, with his guardians, to another school district and is only relevant to a student who wishes to play at the school in the district that they *formerly* lived in. Whether or not plaintiff attended PSHS for his entire high school career through his junior year or not, this bylaw would only be applicable if he wished to play there, not at SLHS. Anderson explained this to SLHS in one of his emails and it is not difficult to glean from the text of the bylaw. It is unclear to this court how this bylaw is applicable to the facts before us.

¶ 31    Bylaw 3.043 and its subsection 3.043.1 read:

"In addition, a student who transfers attendance from one high school to another high school pursuant to these by-laws shall be ineligible unless:

3.043.1 The student transfers attendance in conjunction with a change in residence by both the student and his or her parents *** or guardian from one public high school district to a different high school district."

¶ 32    Plaintiff's argument for eligibility under 3.043.1 is unclear. He states that both moves "were a change in residence ***. from one public high school district to a different high school

district, and both were in conjunction with his transfer of attendance to [SLHS]." Plaintiff also states that SLHS provided Anderson with "[plaintiff's] executed lease agreement, several sworn declarations confirming his move to Woodridge and the fact that [plaintiff] no longer lived with either his parents or his former guardian and requested an official ruling confirming that [plaintiff] is immediately eligible under Bylaw 3.043.1." These statements do not demonstrate compliance with the bylaw, considering that the bulk of the bylaw reads "a change in residence by *both* the student *and* his or her parents *** or guardian *from one public high school district to a different high school district*." (Emphases added.) Neither move was with a guardian or parent and the move relevant to this dispute was not from one district to another—plaintiff attended SLHS both before and after the move. Plaintiff correctly states that 3.043.1 is non-discretionary, but the non-discretionary result is not plaintiff's eligibility, it is his ineligibility.

¶ 33        Furthermore, bylaw 3.040 states that a transferring student's eligibility is subject to bylaws 3.031-3.034, 3.041-3.047, and their subsections. Accordingly, bylaw 3.043's statement that a student shall be ineligible unless the student complies with certain requirements does not mean that the student is eligible if they are merely in compliance with that bylaw alone; rather, the student must be in compliance with *every* relevant eligibility-determinative bylaw to be eligible. The former series of bylaws provide "shall be eligible" language, none of which apply to plaintiff's situation except the catchall subsection, 3.031.5, which states, "In all other cases, students shall not participate until a ruling on their eligibility is made by the Executive Director." Bylaws 3.041-3.047, which concern transfers, use "shall be ineligible unless" language, which, again, does not grant eligibility upon compliance, but merely prevents ineligibility. Even assuming, *arguendo*, this dispute concerns a transfer, plaintiff would

nonetheless be subject to a catch-all provision in bylaw 3.046, which states that a student "shall be ineligible pending a ruling by the Executive Director" with accompanying language permitting the Executive Director to perform an investigation before making a determination.

¶ 34    In sum, a review of the bylaws shows that even had the contract been included in the record in full, the language of the contract renders plaintiff either 1) mandatorily ineligible under 3.043.1 if this concerned a transfer; 2) presumptively ineligible (if 3.043.1 does not apply), pending a decision from Anderson (the IHSA executive director) under 3.046; or 3) presumptively not eligible, pending a decision from Anderson under 3.031.5. We reiterate that it is unclear to this court how the bylaws support plaintiff's arguments on appeal. No matter which of these three bylaws the circuit court found applicable, we cannot say its denial of plaintiff's motion was an abuse of discretion with regard to this argument.

¶ 35                    3. IHSA's Administrative Process

¶ 36    Plaintiff puts forward two arguments regarding IHSA's alleged failure to properly advance plaintiff's petition under the processes laid out in the bylaws. Plaintiff asserts that Anderson's reliance on the advice of "Board Policy 3" is not permitted. Separately, plaintiff asserts that his right to due process and the IHSA constitution both require that he be given the opportunity to appear with counsel at a hearing before the Board.

¶ 37    Plaintiff correctly asserts that the IHSA "Administrative Procedures, Guidelines and Policies" included in the record dictate that, where the constitution and bylaws conflict with the administrative procedures, the constitution and bylaws "shall control." However, plaintiff's arguments do not demonstrate a conflict between the policy and the bylaws. Plaintiff correctly states that the word "emancipation" does not exist anywhere in the bylaws or constitution. However, nothing in the constitution or bylaws prevents the Board from defining an

13

"emancipated student" for the purposes of those instances in which eligibility or ineligibility is subject to the executive director's discretion. Rather than an elaboration of an extant term, Board Policy 3 may exist as an informational measure to help students who would fall into that category navigate their unusual situation that would land them in one of the catch-all provisions of the bylaws for lack of a guardian. Plaintiff argues that Anderson and the Board are prohibited from "interpreting" Board Policy 3 because article 1.420 of the IHSA constitution states that officers and members of the Board "are hereby authorized to interpret the Constitution and By-laws," without mentioning board policies. The section of the constitution cited by plaintiff, however, also authorizes the same entities "to act as an administrative board in the interpretation of and final decision on all questions and appeals arising from the directing of interscholastic activities of member schools." Thus, the constitution clearly grants the Board authority to interpret "all questions and appeals arising from *** interscholastic activities" as necessary to undertake its mandate, which clearly includes interpretation of its own policies.

¶ 38   Plaintiff separately advances an argument that plaintiff has a due process right to an appeal and a hearing under the Illinois Constitution, and that the IHSA constitution also requires such process. The word "argument" is inappropriate, however. Plaintiff alleges "state due process" as one of the counts, but his only citations are to the Illinois constitution and case law establishing plaintiff's property interest in participation in high school athletics. Plaintiff neither explains how IHSA's actions have denied him the process he is due nor cites any precedent to establish exactly what process he is due. Article 1.460 of the IHSA constitution provides the process by which a student or school may appeal an eligibility decision, and a hearing is mandatory once such a written appeal has been submitted.

¶ 39    An appeal under article 1.460 can only be submitted after a decision has been rendered by the executive director. There was some confusion in the email exchange between Anderson and SLHS whether this is a new decision or a modification of a previous decision, but in either case, IHSA has complied with its constitution's requirements. If it is a continuation of the previous appeal, the emails acknowledge that a hearing has already been held and any modification of the decision thereafter might at best be subject to the discretionary provision in the constitution that "[a]fter a hearing before the Board *** the Board may *** sustain, modify, or overturn the Executive Director's decision." That said, that provision is closely followed by a statement that "[t]he decision or action of the Board of Directors pursuant to any hearing held before it, shall in all instances be final." As such, the idea of a "modified decision" may be a fallacy and any such modification constitutes a new appeal. In that case, plaintiff is only obligated to conduct a hearing once the executive director has rendered a decision, which, with regard to plaintiff's eligibility petition, he has not. Plaintiff indicates no provision or law that obligates Anderson to make a decision on his eligibility prior to the board's next meeting in January.

¶ 40    With consideration of the above, the circuit court did not abuse its discretion by denying plaintiff's motion.

¶ 41                    4. Declaratory Relief and Voiding the Contract

¶ 42    The second count alleged in plaintiff's motion is entitled "Declaratory Judgment and Other Equitable Relief." This section serves only as a request for declaratory relief, as it makes no argument whatsoever as to what "other equitable relief" plaintiff seeks.  Under section 2-701 of the Code of Civil Procedure, a court "*may*, in cases of actual controversy, make binding declarations of rights." (Emphasis added.) 735 ILCS 5/2-701 (West 2022). Plaintiff indicates

no statute or precedent that removes the choice from the sole discretion of the court. On appeal, plaintiff makes no argument as to why the decision to not render declaratory relief was an abuse of that discretion. Accordingly, we can find no abuse of discretion here.

¶ 43    Finally, the last count alleged by plaintiff in his complaint argues that bylaws 6.022 and 6.023 are void contractual provisions under Illinois law as they are against public policy. Bylaws 6.022 and 6.023 provide in pertinent part that, if an otherwise ineligible student who is allowed to play pursuant to a "restraining order, injunction or other court order" that subsequently expires without a final determination or is subsequently vacated, stayed, reversed, or otherwise modified, then the games the ineligible student played in will be forfeited and the student or member school will be "subject to penalty for such violations."

¶ 44    This claim is meritless. Though plaintiff requests injunctive relief enjoining IHSA from enforcing bylaws 6.022 and 6.023, those bylaws concern only what action can be taken if a student participates in IHSA events pursuant to a TRO or other court order. As no court order has been issued requiring that IHSA allow plaintiff to participate, there can be no "irreparable injury" to plaintiff resulting from the enforcement of those bylaws, undermining his claim for a TRO. See *Mohanty*, 225 Ill. 2d at 62.

¶ 45    Furthermore, in discussing the fact that a plaintiff seeking a TRO need only raise a "fair question," our supreme court has stated: "It is this extraordinary characteristic of temporary restraining orders and preliminary injunctions which distinguishes them from other types of litigation and justifies holding the moving party liable for all damages if the preliminary injunction or temporary restraining order is later found to have been wrongfully issued." *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382 (1985). Since the relevant bylaws directly mirror longstanding precedent regarding TROs, the circuit court did not abuse its

discretion when it denied plaintiff's motion, nor did it abuse its discretion by declining to issue a declaratory judgment regarding those bylaws.

¶ 46                                            III. CONCLUSION

¶ 47        For the foregoing reasons, we affirm the trial court's order.

¶ 48        Affirmed.

¶ 49        PRESIDING JUSTICE LAMPKIN, specially concurring:

¶ 50        I agree with the majority that the circuit court did not abuse its discretion when it denied plaintiff's motion for a TRO and declaratory relief. However, I write separately to set forth my analysis regarding plaintiff's showing of a fair question of the likelihood-of-success-on-the-merits element of his request for injunctive relief.

¶ 51        Plaintiff, as the party seeking the preliminary injunction, was required to demonstrate (1) a clearly ascertained right in need of protection, (2) irreparable injury in the absence of an injunction, (3) no adequate remedy at law, and (4) a likelihood of success on the merits of the case. *People ex rel. Klaeren v. Village of Lisle,* 202 Ill. 2d 164, 177 (2002). "On appeal, we examine only whether the party seeking the injunction has demonstrated a *prima facie* case that there is a fair question concerning the existence of the claimed rights." *Id.* A decision to grant or deny a preliminary injunction is generally reviewed for an abuse of discretion. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Railway Co.,* 195 Ill. 2d 356, 366 (2001).

¶ 52        The thrust of the parties' arguments before this court centers on the fourth prong of injunctive relief: whether plaintiff enjoys a likelihood of success on the merits. Success on the merits in this case would be a declaration by the circuit court that plaintiff is eligible to play basketball this year for St. Laurence High School under the IHSA bylaws. IHSA maintains that

there is no likelihood of success on the merits because the plain language of the applicable sections of the IHSA bylaws does not automatically confer eligibility on a student-athlete so that he may play at any chosen school upon turning 18 years old.

¶ 53      Plaintiff seeks an eligibility declaration under section 3.043.1 of the bylaws, which provides:

> "3.043 In addition, a student who transfers attendance from one high school to another high school pursuant to these by-laws shall be ineligible unless:
>
> 3.043.1 The student transfers attendance in conjunction with a change in residence by both the student *and his or her parents \*\*\* or guardian* from one public high school district to a different high school district; \*\*\*" (Emphasis added.)

¶ 54      Recognizing that his parents and guardian never changed their residence, plaintiff attempts a workaround of this provision of section 3.043.1 by arguing that, as an 18 year old, he is his custodial parent and thus satisfies that provision of the bylaw. To support this proposition, plaintiff cites section 3.034.2 of the bylaws, which provides:

> "3.034.2 Students who have attended one school for their entire high school career and whose parents, custodial parent or court appointed guardian moves from the district or community traditionally served by that school following the student's completion of the eleventh (11th) grade, may remain in that member school and retain eligibility regarding residence for the twelfth (12th) grade, provided:

"(1) The student, \*\*\* if eighteen (18) years of age, \*\*\* is accepted for enrollment by the school as a student having reached the age of majority under the laws of the State of Illinois; \*\*\*"

¶ 55 The over-18 language in section 3.034.2 does not support plaintiff's argument for eligibility. That provision applies only in a limited circumstance: when students attend one school for their entire career but their parents or guardian then move from the school district. Here, plaintiff attended Plainfield South High School during the 2023-2024 school year before transferring to St. Laurence in the fall of 2024. Furthermore, plaintiff does not seek to remain at Plainfield South High School, and his parents or guardian did not move from the district traditionally served by that school. Thus, by its own terms, section 3.034.2 provides no basis on which plaintiff could claim eligibility.

¶ 56 Plaintiff reaching the age of 18 years does not trump any eligibility criteria under the transfer and residency provisions of the IHSA bylaws. These rules apply to all student-athletes competing in IHSA-sanctioned events, whether they are 18 years old or not. Plaintiff has not shown otherwise and thus cannot prevail on his claims. Accordingly, the circuit court properly denied plaintiff's TRO application because the failure to establish any one element of a TRO is sufficient to deny the motion, and this court need not address any remaining elements that plaintiff pleads in his complaint. *Yellow Cab Co. v. Production Workers Union of Chicago & Vicinity, Local 707*, 92 Ill. App. 3d 355, 356 (1980).